The Honorable S. Kate Vaughan

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9    TSR LLC,

10              Plaintiff,                    No. 2:21-cv-01705-SKV

11        v.

12   WIZARDS OF THE COAST LLC,               WIZARDS OF THE COAST LLC'S
                                             MOTION FOR A PRELIMINARY
13              Defendant.                    INJUNCTION

14

15   WIZARDS OF THE COAST LLC,               **Noted for consideration:**
                                             **September 30, 2022**
16              Counterclaim Plaintiff,
                                             **ORAL ARGUMENT**
17        v.                                 **REQUESTED**

18   TSR LLC; JUSTIN LANASA; and DUNGEON
     HOBBY SHOP MUSEUM LLC,
19
                Counterclaim Defend-
20   ants.

21

22

23

24

25

26

27

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

I.     Introduction ........................................................................................................... 1

II.    Factual Background .............................................................................................. 1

       A.   Wizards Acquired TSR, Inc. and All of Its Intellectual Property, Including the Marks.  1

       B.   Wizards Has Used the Marks Since at Least 2012. ........................................ 2

       C.   LaNasa Founds TSR LLC in 2020 and Registers Wizards' Marks; Litigation Follows.  2

       D.   Counterclaim Defendants Distribute a Star Frontiers "Play Test" Containing Racist and Transphobic Content. ............................................................................................ 3

       E.   Counterclaim Defendants' Products, Including Star Frontiers New Genesis, Risks Wizards' Reputation for Inclusive Gaming. ................................................... 5

III.   Argument ............................................................................................................. 7

       A.   Wizards Will Succeed on the Merits. ............................................................. 7

       B.   Wizards Will Suffer Irreparable Harm without a Preliminary Injunction. ................... 14

       C.   The Balance of the Equities Favors Entering a Preliminary Injunction. ..................... 15

       D.   A Preliminary Injunction Serves the Public Interest. ..................................... 16

       E.   Wizards Seeks Narrow Injunctive Relief. ...................................................... 16

IV.    Conclusion ......................................................................................................... 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*2Die4Kourt v. Hillair Cap. Mgmt., LLC*,
    692 F. App'x 366 (9th Cir. 2017) .................................................................14

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*,
    748 F. App'x 115 (9th Cir. 2018) ..............................................................15

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) ....................................................................13

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ..................................................................16

*Am., Inc. v. Skechers USA, Inc.*,
    890 F.3d 747 (9th Cir. 2018) ....................................................................15

*Amazon.com Inc. v. Robojap Techs. LLC*,
    No. C20-694, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021) ...................15

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ...........................................................8, 12, 13

*Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*,
    No. C20-670, 2021 WL 4319448 (W.D. Wash. Sept. 23, 2021)....................10, 13

*BOKF, NA v. Estes*,
    923 F.3d 558 (9th Cir. 2019) ......................................................................7

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...........................................................9, 11, 12

*Cadence Design Sys. v. Avant! Corp.*,
    125 F.3d 824 (9th Cir.1997) .....................................................................16

*CytoSport, Inc. v. Vital Pharms., Inc.*,
    617 F. Supp. 2d 1051 (E.D. Cal.).................................................................16

*eAcceleration Corp. v. Trend Micro, Inc.*,
    408 F. Supp. 2d 1110 (W.D. Wash. 2006)......................................................12

*Experience Hendrix, L.L.C. v. Pitsicalis*,
    No. 17 Civ. 1927, 2020 WL 3564485, at *3 (S.D.N.Y. July 1, 2020)...................13

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007) ......................................................................8

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*HMH Publ'g Co. v. Brincat*,
    504 F.2d 713 (9th Cir. 1974) ................................................................12

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    738 F.3d 1085 (9th Cir. 2013) ..............................................................11

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
    2 F.4th 1150 (9th Cir. 2021) ..................................................................9

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ..................................................................7

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ..................................................................7

*Masters Software, Inc. v. Discovery Commc'ns, Inc.*,
    725 F. Supp. 2d 1294 (W.D. Wash. 2010) ..............................................9

*Miramar Brands Grp., Inc. v. Fonoimoana*,
    No. CV 16-4224, 2017 WL 2903256 (C.D. Cal. June 13, 2017) ..............8

*Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank*,
    98 Wn.2d 853, 659 P.2d 481 (1983) ............................................7, 8, 13

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ......................................................9, 10, 11

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir. 2004) ..............................................................16

*Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ................................................................14

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
    425 F.3d 708 (9th Cir.2005) .................................................................16

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ............................................................9, 10

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ..................................................................8

*Univ. of Haw. Pro. Assembly v. Cayetano*,
    183 F.3d 1096 (9th Cir. 1999) ..............................................................15

**Statutes**

15 U.S.C. § 1114.....................................................................................9

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

15 U.S.C. § 1116 .................................................................................................................... 14

15 U.S.C. § 1125 .......................................................................................................... 8, 9, 12, 14

RCW 19.77.140 ..................................................................................................................... 13

RCW 19.77.900 ..................................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.   INTRODUCTION

Plaintiff/Counterclaim Defendants' to-be-released Star Frontiers New Genesis game contains despicable content including blatantly racist and transphobic content.  Counterclaim Defendants have distributed copies of its game for "play testing," and Dungeon Hobby Shop Museum's website has a listing of the game for sale—albeit with an "out of stock" description.

Wizards of the Coast LLC ("Wizards") moves to enjoin publication or any further distribution of the Star Frontiers New Genesis game because it uses trademarks belonging to Wizards, including "Star Frontiers" and "TSR".  Wizards would be irreparably harmed by the publication and distribution of the game using its trademarks because consumers may mistakenly associate Wizards with the reprehensible content of the game, damaging its reputation and goodwill and undermining its efforts to foster a culture that embraces diversity around its games.  The Court should enter an order enjoining Counterclaim Defendants from any further publication or distribution of the Star Frontiers New Genesis game or any other product using the Wizards' marks.

## II.   FACTUAL BACKGROUND

### A.   Wizards Acquired TSR, Inc. and All of Its Intellectual Property, Including the Marks.

Wizards is a publisher of renowned fantasy games, including tabletop role playing games ("RPGs").  Compl., Dkt. No. 1 ("Compl.") ¶ 9.  In 1997, Wizards purchased TSR, Inc., the company that created, published, and distributed Dungeons & Dragons, the original tabletop role playing game that has been enjoyed by millions of players since 1974.  Declaration of Liz Schuh ("Schuh Decl.") ¶ 2; Compl. ¶ 12.  TSR, Inc. owned the rights to, and produced, advertised, and sold other product lines, including a line of games called Star Frontiers.  Schuh Decl. ¶ 2; Answer and Countercl., Dkt. No. 11, at 6 *et seq.* ("Countercl.") ¶ 10.

When Wizards acquired TSR, Inc., it acquired all of TSR, Inc.'s intellectual property, including trademarks in TSR and Star Frontiers.  Countercl. ¶ 17; Schuh Decl. ¶ 3.  TSR, Inc. formally assigned its U.S. trademark registrations to Wizards, in an assignment recorded with the United States Patent and Trademark Office on December 6, 2000.  Schuh Decl. ¶ 3; Countercl. ¶ 18 & Ex. A.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **B.    Wizards Has Used the Marks Since at Least 2012.**

2         Wizards has continued to use the marks to this day.  Dungeons & Dragons, for example, is

3    one of Wizards' most prominent and well-recognized brands.  Countercl. ¶ 21; Schuh Decl. ¶ 4.

4    While several trademarks are at issue in this litigation, this motion relates to the use of two in

5    particular: the "TSR" word mark (the "TSR Mark") and the "Star Frontiers" word mark (the "Star

6    Frontiers Mark") (the TSR Mark and the Star Frontiers Mark are collectively referred to as the

7    "Marks").

8         *The TSR Mark.*  The TSR Mark is a word mark consisting of the letters "TSR"—the busi-

9    ness name of the original creator of Dungeons & Dragons, and an acronym standing for "Tactical

10   Studies Rules."  Schuh Decl. ¶ 5.  Since acquiring TSR, Inc., Wizards continues to use the TSR

11   Mark originally created and used by its predecessor in interest.  *Id.*  In particular, Wizards has

12   licensed the TSR Mark and related Dungeons & Dragons intellectual property to OneBookShelf,

13   Inc., which sells older editions of Dungeons & Dragons products bearing TSR Mark.  Countercl.

14   ¶ 23; Schuh Decl. ¶ 6.  OneBookShelf has sold products bearing the TSR Mark continuously since

15   December 2012.  Schuh Decl. ¶ 7.  OneBookShelf has sold hundreds of thousands of products in

16   the past decade bearing the TSR Mark.  *Id.*

17        *The Star Frontiers Mark.*  Likewise, Wizards licenses the trademark "Star Frontiers" to

18   OneBookShelf, which has continuously sold products bearing the Star Frontiers Mark since De-

19   cember 2012.  *Id.* ¶¶ 6, 8.  OneBookShelf also has sold thousands of products bearing the Star

20   Frontiers Mark.  *Id.* ¶ 8.

21   **C.    LaNasa Founds TSR LLC in 2020 and Registers Wizards' Marks; Litigation Follows.**

22        In 2020, Counterclaim Defendant Justin LaNasa founded and registered a company he

23   named "TSR LLC," first in Wisconsin and then in North Carolina.  Countercl. ¶ 26.  He also cre-

24   ated Counterclaim Defendant Dungeon Hobby Shop Museum, LLC.  Countercl. ¶ 31.

25        Together, the Counterclaim Defendants claim ownership of the prior TSR, Inc.'s intellec-

26   tual property—IP that Wizards continues to use, including through its licensee, OneBookShelf.

27   Countercl. ¶ 27; Schuh Decl. ¶¶ 5-8; Declaration of Lauren Rainwater ("Rainwater Decl.") ¶ 2.

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Despite Wizards' ownership and use of these Marks, Counterclaim Defendants publicly claim that

2   *they* own and may use the Marks, including the TSR and Star Frontiers Marks.  Countercl. ¶ 38;

3   Rainwater Decl. ¶ 2.  They claim the Marks are available for their use and registration because

4   Wizards did not "maintain[] the registrations," Compl. ¶ 14, thus assuming that expiration of the

5   registrations resulted in Wizards losing its rights to the Marks.

6          That assumption is incorrect.  Despite the expiration of the registrations, Wizards has main-

7   tained its common law trademark rights in the Marks because it has continued to use the Marks in

8   commerce.  Accordingly, Wizards demanded that the Counterclaim Defendants cease and desist

9   from use of its Marks and filed a petition in the U.S. Patent and Trademark Office to cancel a

10  registration that TSR LLC obtained for "TSR."  Rainwater Decl. ¶ 4.  TSR LLC then sued Wizards

11  for declaratory judgment that Wizards had no rights to the Marks.  Compl., Dkt. No. 1  Wizards

12  filed an Answer and Counterclaim alleging various trademark and consumer protection claims.

13  Countercl.

14         The Counterclaim Defendants are well aware that their use and registration of the Marks

15  trades on the reputation and goodwill built up by Wizards and its predecessor TSR, Inc.  For in-

16  stance, Counterclaim Defendants advertise their Star Frontiers product as "A Science Fiction Clas-

17  sic Returns," with the "Classic" being Wizards' products.  Rainwater Decl. ¶ 8.  In a public inter-

18  view, LaNasa admitted "We can't come out with the old IP, and that kind of limits us to having to

19  reboot the game in a new fashion."  *Id.* ¶ 5; Countercl. ¶ 40.  He also said that TSR LLC will be

20  "coming out with a bunch of, mainly, first edition stuff . . . things that are compatible with first

21  edition," referring to Dungeons & Dragons First Edition, and that while Counterclaim Defendants

22  "can't use the name 'Advanced Dungeons & Dragons'" they would "come close."  Rainwater

23  Decl. ¶ 5; Countercl. ¶ 41.

24  **D.    Counterclaim Defendants Distribute a Star Frontiers "Play Test" Containing Racist
         and Transphobic Content.**

25         In the early days of this litigation, it appeared that Counterclaim Defendants were not pub-

26  lishing game content with the Marks at issue:  the Museum website offered t-shirts, dice, and

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   stickers with the Marks for sale, but there were no active listings for game products using the

2   Marks. Rainwater Decl. ¶ 6; Countercl. ¶ 33. The Museum website listed a Star Frontiers "reboot"

3   book, called Star Frontiers New Genesis using the Marks, but it was listed as out of stock. Rain-

4   water Decl. ¶ 7; Countercl. ¶ 33. To Wizards' knowledge, Counterclaim Defendants were not

5   actually distributing Star Frontiers New Genesis. Schuh Decl. ¶ 10.

6      That changed in July. Gaming publications began covering a "play test" release of Star

7   Frontiers New Genesis—essentially a preview copy that Counterclaim Defendants distributed to

8   players who were interested in trying the game. Rainwater Decl. ¶ 10. The game utilized the

9   Marks and contained alarming content: stating, for example, that "races in Star Frontiers New

10  Genesis are not unlike races in the real world. Some are better at certain things than others, and

11  some races are superior than others." Rainwater Decl. ¶ 12, Ex. E at 13. A "negro" race is de-

12  scribed as a "Subrace" in the game and as having "average" intelligence with a maximum intelli-

13  gence rating of 9, while the "norse" race has a minimum intelligence rating of 13.

14

15  - Negro( Sub race Ulfar)(HUMANOID-CLASS) -Tall, thick bodied, dark skinned even
        purple dark, brown-eyed race with large strength average intelligence ALL Attributes are
16        in the 10+ range, except intelligence which is maximum a +9.
    - Nordic( Ulfar)(HUMANOID-CLASS) -Tall, blonde, blue-eyed race with exceptional
17        attributes and powers ALL Attributes are in the 13+ range.

18  *Id.* Ex. E at 13. The game also describes "latent issues" with certain races like "blacks having

19  issues with sickle cell enemia [sic] and with family issues."

20

21  - Think about your race carefully as some races are more superior in power etc, some
        races have latent issues, similar to blacks having issues with sickle cell enemia and with
22        family issues. Remember racism is bad, do don't do racial things like racism. Have fun
        with it but remember some races are just sometimes superior in some ways.
23

24  *Id.* at 9. The game also refers to the Black Lives Matter movement as "radical." *Id.* at 11.

25     Star Frontiers New Genesis also contains offensive transphobic material: it includes a spe-

26  cific gender option for the characters "Male/Female no bonuses, and no Trans."

27

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

STAR FRONTIERS – NEW GENESIS CORE RULES

**GENDER: Male /Female no bonuses, and No Trans**

*Id.* at 14-18.  And the play test included a comment: "should we make a trans type race? Maybe 'transbots?'"

**(JUSTIN) SHOULD WE MAKE A TRANS TYPE RACE? MAYBE "TRANSBOTS"?**

**LET ME KNOW AND CAN ADD**

**D.**

*Id.* at 18.

Gaming media has covered the play test release in detail—which is to be expected, given the content of the game.  The press and social media agree Star Frontiers New Genesis is racist and bigoted.  Rainwater Decl. ¶ 10, Exs. C, D.  Wizards now moves for a preliminary injunction to prevent Counterclaim Defendants from any further distribution of this degrading, offensive product containing Wizards' Marks—or any other iteration of the Star Frontiers New Genesis games—to avoid irreparable harm to Wizards' reputation and brand.

**E.    Counterclaim Defendants' Products, Including Star Frontiers New Genesis, Risks Wizards' Reputation for Inclusive Gaming.**

Wizards has long embraced an inclusive culture for gaming, including for its Dungeons & Dragons products.  Schuh Decl. ¶¶ 11-12.  All players are welcome in Wizards' games.  In recent years, Wizards has redoubled its commitment to diversity and inclusion.  For example, Wizards is updating its descriptions of people when reprinting older Dungeons & Dragons products to remove racially insensitive material.  *Id.* ¶ 12, Ex. B.  It increasingly uses sensitivity readers and diversity experts in its creative process to ensure that its storytelling reflects its values.  *Id.*  New products no longer include cultural traits like languages and acknowledge a range of physical characteristics

Davis Wright Tremaine LLP
Law Offices
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   for character races.  *See, e.g.*, *id.* ¶ 13, Ex. C.

2          Wizards has worked hard to inform its customers of these efforts because it wants people

3   to know what it stands for.  *Id.* ¶¶ 11-15.  For instance, in June 2020, Wizards published a post on

4   its website detailing some of its efforts to ensure its D&D products reflect its values around diver-

5   sity.  *Id.* ¶ 12, Ex. B.  When Wizards publishes new books, it alerts players to changes it makes to

6   better foster inclusive gaming.  *See, e.g.*, *id.* ¶ 13, Ex. C.  As recently as this month, Wizards

7   released a statement recognizing problematic content within its newest campaign containing con-

8   tent adapted from a 1982 version of a game, confirming Wizards' commitment to diversity and to

9   publishing inclusive products.  *See id.* ¶ 14, Ex. D.  Wizards' efforts have been noted by the RPG

10  community, including coverage in the press and discussions in player forums.  *Id.* ¶ 15, Ex. E.

11         The distribution of Counterclaim Defendants' Star Frontiers New Genesis game threatens

12  Wizards' efforts to promote inclusive gaming—and Wizards' reputation as a company that works

13  to embrace diversity and inclusivity.  As described above, the play test release of Star Frontiers

14  New Genesis has garnered a great deal of attention in the gaming community.  But not all consum-

15  ers readily distinguish between this product and those distributed by Wizards, including the origi-

16  nal Star Frontiers.  For example, on multiple online forums, consumers have expressed confusion

17  about whether Star Frontiers New Genesis is part of the Star Frontiers franchise that Wizards owns

18  and distributes.  Rainwater Decl. ¶ 13.  In some cases, even sophisticated RPG fans mistake the

19  Star Frontiers New Genesis product at first glance—a reasonable error, in light of the name and

20  logos—before realizing their confusion.  *Id.*  In others, confused consumers have been corrected

21  by other forum participants—although there is no confirmation that the confused players—or the

22  multiple others who "upvote" their comments—ever see or take note of the responses.  *Id.*

23         Tabletop RPG games are social by design.  Schuh Decl. ¶ 17.  Players gather with friends

24  to engage in group storytelling, often using a single book or set of books, and it is not unusual for

25  a group playing together to have members with more and less experience.  *Id.*  This means con-

26  sumers may experience Star Frontiers New Genesis without having purchased it directly—at a

27  friend's house or other gathering in a group of players.  *Id.*  And because not all consumers will be

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    dedicated gamers, some will be especially prone to mistaking the Star Frontiers New Genesis

2    product for one of Wizards'—and assuming that Wizards has published and distributed the offen-

3    sive racist content in that game.  *Id*. ¶ 18.  This will sully Wizards' reputation and harm its efforts

4    to promote inclusivity in gaming.  *Id*. ¶ 19.

### III.    ARGUMENT

6        A party seeking a preliminary injunction must show that: (1) it is likely to succeed on the

7    merits, (2) it is likely to suffer irreparable harm without the preliminary relief, (3) the balance of

8    equities tips in its favor, and (4) an injunction is in the public interest.  *See Marlyn Nutraceuticals,*

9    *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Nat.*

10   *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Under the Ninth Circuit's sliding scale test, none

11   of these factors is controlling, and a strong showing of one factor can compensate for a weaker

12   showing of another.  *See BOKF, NA v. Estes*, 923 F.3d 558, 562 (9th Cir. 2019) ("We employ a

13   'sliding scale test . . . .'").  All four factors weigh in favor of entering a preliminary injunction

14   here.

15       The Court should enjoin Counterclaim Defendants from publishing or further distributing

16   Star Frontiers New Genesis, or any other product using the Marks because Wizards satisfies all

17   four criteria for a preliminary injunction.  *First*, Wizards has trademarks that Counterclaim De-

18   fendants are using to brand, advertise, and sell a new infringing product.  *Second*, irreparable harm

19   is assumed in a trademark infringement case and the infringing product here is plagued with racial

20   stereotypes and other offensive concepts, in direct conflict with Wizards' goal to make RPGs fun

21   and accessible to everyone.  *Third*, Counterclaim Defendants will suffer no harm from a prelimi-

22   nary injunction because it knowingly infringed Wizards' Marks.  *Finally*, a preliminary injunction

23   serves the public interest by protecting intellectual property rights.

### A.    Wizards Will Succeed on the Merits.

25       Wizards must only show a likelihood of succeeding on the merits of one cause of action to

26   warrant a preliminary injunction.  *See League of Wilderness Defs./Blue Mountains Biodiversity*

27   *Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014).  Here, Wizards will easily succeed on

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   both its false designation of origin and trademark infringement claims for Counterclaim Defend-

2   ants' sale or distribution of the Star Frontiers New Genesis game.

3                          **a.      False Designation of Origin**

4        A claim for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), requires a showing

5   that Counterclaim Defendants "(1) use in commerce (2) any word, false designation of origin, false

6   or misleading description, or representation of fact, which (3) is likely to cause confusion or mis-

7   represents the characteristics of his or another person's goods or services." *Freecycle Network,*

8   *Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007) (citing 15 U.S.C. § 1125(a)).

9        The first two elements are easily met. *First,* Counterclaim Defendants display the Marks

10   on their public website, and, relevant here, in marketing products including Star Frontiers New

11   Genesis. Rainwater Decl. ¶¶ 7-9. This constitutes use in commerce. *United States v. Sutcliffe*,

12   505 F.3d 944, 952–53 (9th Cir. 2007) ("[A]s both the means to engage in commerce and the

13   method by which transactions occur, the Internet is an instrumentality and channel of interstate

14   commerce." (internal quotation omitted)). Further, Counterclaim Defendants have already pro-

15   vided the infringing game to consumers. Rainwater Decl. ¶ 10. Even if the play test release was

16   not sold, its distribution constitutes use in commerce. *See Miramar Brands Grp., Inc. v. Fonoimo-*

17   *ana*, No. CV 16-4224, 2017 WL 2903256, at *6 (C.D. Cal. June 13, 2017) (prior use in commerce

18   based on "non-sales activity").

19        *Second,* the TSR and Star Frontiers Marks are each undisputedly a "word, term, name,

20   symbol" that qualifies for protection under the Lanham Act—which Counterclaim Defendants *ad-*

21   *mit*, in their own applications to register the Marks and in this lawsuit against Wizards. Compl.

22   ¶ 30.

23        Wizards' claim also shows the third element—likelihood of confusion—under the Ninth

24   Circuit's *Sleekcraft* test, which evaluates:

25        the following eight . . . factors for guidance . . . : (1) strength of the protected mark;
           (2) proximity and relatedness of the goods; (3) type of goods and the degree of
26         consumer care; (4) similarity of the protected mark and the allegedly infringing
           mark; (5) marketing channel convergence; (6) evidence of actual consumer
27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion.

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citation omitted).[1]  "The factors should be considered together to determine, under the totality of the circumstances, whether a likelihood of confusion exists," and "are neither exhaustive nor dispositive."  *Ironhawk Techs., Inc. v. Dropbox, Inc*., 2 F.4th 1150, 1160-61 (9th Cir. 2021).  Each of these factors either weighs in favor of finding a likelihood of confusion or is neutral.

**Strength of the protected mark.**  To determine the strength of a mark, the mark must be categorized on the "conceptual distinctiveness spectrum."  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1058 (9th Cir. 1999).  The Ninth Circuit's description of this spectrum in the *Pom Wonderful* case is instructive:

> On this spectrum, the most distinctive marks—i.e., arbitrary and fanciful marks— receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection.  Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks.  Unlike descriptive marks, which define qualities or characteristics of a product in a straightforward way, suggestive marks convey impressions of goods that require the consumer to use imagination or any type of multistage reasoning to understand the mark's significance.

*Pom Wonderful*, 775 F.3d at 1126 (internal quotations and citations omitted).

The TSR and Star Frontiers trademarks are arbitrary or fanciful.  Neither Mark is a recognized term or phrase and neither Mark, on its own, describes games or RPG.  *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 632 (9th Cir. 2005) ("Fanciful marks have no commonly known connotation to the product at hand."); *see also Masters Software, Inc. v. Discovery Commc'ns, Inc*., 725 F. Supp. 2d 1294, 1299 (W.D. Wash. 2010) (same).  "Star Frontiers" certainly evokes science fiction or fantasy, but the descriptiveness of the Mark ends there and TSR, standing for Tactical Studies Rules (Schuh Decl. ¶ 5), is meaningless.  At minimum, Wizards' Marks are suggestive because they include the product or company name even if the customer must use his or

---

[1] *Pom Wonderful* is a trademark infringement claim under 15 U.S.C. § 1114; but the analysis is the same as a claim under 15 U.S.C. § 1125.  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1046 (9th Cir. 1999) (Section 43 Lanham Act false designation claims track the elements of claims for claims for infringement of registered marks).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  her imagination to determine exactly what the company does.  *See Bio Mgmt. Nw. Inc. v. Wash.*

2  *Bio Servs.*, No. C20-670, 2021 WL 4319448, at *3 (W.D. Wash. Sept. 23, 2021) (finding a shield

3  with biohazard symbol and company name to be suggestive and the factor to favor of a likelihood

4  of confusion).

5       Wizards' Marks also are strong due to their significant recognition in the marketplace.

6  Wizards' products with these Marks are sold nationally, continually since at least 2012 (and gen-

7  erally since the 1980s, for some time by the original TSR, Inc.), Schuh Decl. ¶ 8, and Wizards

8  invests in sales and marketing for these products, *id.* ¶ 9.  For instance, earlier this year, Wizards'

9  parent company Hasbro, Inc. acquired D&D Beyond to further expand its RPG offerings.  *Id.*,

10  Ex. A.  *See Pom Wonderful*, 775 F.3d at 1126-27 (longstanding use and national "sales and mar-

11  keting efforts" sufficient to "render . . . mark commercially strong").  This factor weighs in favor

12  of a likelihood of confusion.

13       **Proximity and Relatedness of Goods.**  "The standard for deciding whether the parties'

14  goods or services are 'related' is whether customers are 'likely to associate' the two product lines."

15  *Surfvivor Media, Inc.*, 406 F.3d at 633 (citation omitted).  Counterclaim Defendants and Wizards

16  both use the Marks to sell RPGs.  *See* Compl. ¶ 24 (listing the product classes for TSR LLC's

17  registration applications for the Marks).  Counterclaim Defendants could hardly dispute the prox-

18  imity of their products, when they even advertise Star Frontiers New Genesis as a return of a

19  "science fiction classic", with the "classic" being Wizards' products.  Rainwater Decl. ¶ 8.  The

20  goods are in the same market and target the exact same consumers.  This factor weighs in favor of

21  finding a likelihood of confusion.

22       **Type of goods and degree of customer care.**  Although many RPGs have a loyal fanbase

23  of players who are deeply engaged, they also attract new players every day.  Schuh Decl. ¶¶ 16-

24  18. RPGs are social by design, and longtime players often invite friends to join them, introducing

25  RPGs to new players.  *Id.*  Many consumers, even those who are familiar with Wizards' products,

26  will be unable to identify—at first glance—that Star Frontiers New Genesis is not Wizards' game.

27  And these are not expensive products likely to engender significant consumer care:  Counterclaim

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Defendants advertise Star Frontiers New Genesis for $49.99; Wizards sells its Star Frontier products for approximately $10.00. *See* Countercl. ¶ 25. At these prices, purchasers "are likely to exercise less care, thus making confusion more likely." *Brookfield*, 174 F.3d at 1060.

**Similarity of marks.** The parties agree that the Marks are identical. *See generally* Compl. & Countercl. (referring to the "Marks" collectively; neither party distinguishes between the marks used by the other party). Because Counterclaim Defendants are using the exact same Marks as Wizards, this factor weighs in favor of a likelihood of confusion. *Hokto Kinoko Co. v. Concord Farms, Inc*., 738 F.3d 1085, 1096 (9th Cir. 2013) ("[T]he similarity of the marks[] weighs unequivocally in favor of a finding of consumer confusion because the marks are identical.").

**Marketing channel convergence.** When assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products. *Nutri/System, Inc. v. Con–Stan Indus*., Inc., 809 F.2d 601, 606 (9th Cir. 1987). Counterclaim Defendants and Wizards use the Marks to sell the same type of RPG (with TSR advertising its product as a "return" of Wizards' product, *see* Rainwater Decl. ¶ 8) both through the internet. *See Pom Wonderful*, 775 F.3d at 1130 (finding similar products both sold in nationwide supermarkets to weigh in favor of a likelihood of confusion). Further, both companies market and advertise the products through the internet and social media. Rainwater Decl. ¶¶ 7, 9; Shuh Decl. ¶¶ 6-8. This is "an overlapping general class of consumers." *Pom Wonderful*, 775 F.3d at 1131.

**Evidence of actual consumer confusion.** At the preliminary injunction stage, this factor is "of diminished importance" due to "difficulties in gathering evidence of actual confusion." *Id*. at 1131 (omitting internal citations). Even so, Wizards has identified multiple instances of initial consumer confusion. Rainwater Decl. ¶ 13. For example, in a comment on a post about TSR LLC (also known as "NuTSR" in the gaming community) a consumer obviously deeply familiar with Wizards' products described his own confusion with Counterclaim Defendants' products and website and how he "thought this was about original TSR." *Id*. Similarly, a Reddit post about Star Frontiers New Genesis, with 599 comments, is replete with comments expressing disgust for the

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

game's offensive material.  *Id.*  In a related Reddit post, a player even expresses concern for continuing to play Star Frontiers because of its apparent association with Star Frontiers New Genesis.  *Id.*  In any event, an absence of proof of actual consumer confusion is "unnoteworthy" for a preliminary injunction and this factor is at a minimum neutral.  *Id.*

**Counterclaim Defendants' intent.**  "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume . . . that the public will be deceived."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).  When this intent factor is present, it weights "heavily in favor of finding a likelihood of confusion."  *eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1117 (W.D. Wash. 2006).  TSR LLC claims it is "rebooting" Wizards' products and has publicly stated it will "come close" to Wizards' intellectual property.  *See* Countercl. ¶¶ 38, 40, 41; Rainwater Decl. ¶ 5.  It clearly intends to use the Wizards' Marks to exploit Wizards' goodwill and reputation in order to sell the Star Frontiers New Genesis products to Wizards' customers.  *HMH Publ'g Co. v. Brincat*, 504 F.2d 713, 720 (9th Cir. 1974) (holding an intent to exploit goodwill creates an inference of likelihood of confusion).  This, too, favors a finding of likelihood of confusion under *Sleekcraft*.

**Likelihood of Product Expansion.**  When the parties "already compete to a significant extent," this factor is "relatively unimportant" to the analysis of confusion.  *Brookfield*, 174 F.3d at 1055.  As described above, the parties already directly compete and this factor is neutral.

Wizards has and will continue to show that Counterclaim Defendants violate the Lanham Act by using Wizards' Marks in commerce in a way that is likely to cause confusion, meeting all elements of the test for false designation of origin.  It therefore is likely to succeed on this claim, and a preliminary injunction is warranted.

**b.      Common Law Trademark Infringement**

Wizards also is likely to succeed on its claim for common law trademark infringement, which provides an independent basis satisfying the first prong of the *Winters* test.  To succeed on a claim for common law trademark infringement, Wizards must show it has a protectible interest

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

in the mark and that Defendant's use of the mark is likely to cause consumer confusion. *See* RCW 19.77.900 (recognizing common law trademark rights); *see Bio Mgmt. Nw. Inc.*, 2021 WL 4319448, at *2 (explaining the elements of a state trademark claim mirror the elements of a federal trademark claim). As explained above, Counterclaim Defendants' use of the Marks is likely to confuse consumers. *See supra*, Section III(A)(a); *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank*, 98 Wn.2d 853, 860 n. 1, 659 P.2d 481 (1983) (Washington State follows the likelihood of confusion standard for trademark infringement claims); RCW 19.77.140 (identifying the same *Sleekcraft* factors to analyze likelihood of confusion).

Wizards has an ownership interest in the Marks, fulfilling the other element of this claim. Although Wizards has not maintained registrations of the Marks, it has common law trademark rights in the Marks. In the Ninth Circuit and Washington, the owner of a protectible common law trademark must show prior use of the mark before it was registered and "that such use has continued to the present" sufficient "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc*., 744 F.3d 595, 599 (9th Cir. 2014) (internal citations and quotations omitted). Wizards readily meets that test.

TSR LLC began applying to register the Marks beginning in 2020 and first used the Marks in April 2021. Compl. ¶¶ 21, 24; Rainwater Decl. ¶ 3, Ex. A. By contrast, Wizards' predecessor in interest, TSR, Inc., began using the marks at least as early as the 1980s,[2] and Wizards has continuously used the Marks since at least as early as January 2012 through its license to OneBookshelf. Schuh Decl. ¶¶ 7-8; Countercl. ¶ 23. Wizards' licensing of these Marks, and the licensee's subsequent promotion and sales, shows continuous use to maintain a common law trademark. *See Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17 Civ. 1927, 2020 WL 3564485, at *3 (S.D.N.Y. July 1, 2020) (holding "Plaintiffs and their licensees have made continuous and substantial use of the Hendrix marks" and thus "have a valid mark"), *report and recommendation adopted sub nom.*

---

[2] TSR, Inc. first registered the TSR Mark under Reg. No. 1242708 and the Star Frontiers Mark under Reg. No. 1245487, through applications filed in 1982. Schuh Decl. ¶ 3.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Experience Hendrix, LLC v. Hendrix*, 17 Civ. 1927, 2020 WL 4261818 (S.D.N.Y. July 24, 2020).

2   This use predates—and thus precludes—TSR LLC's claims to the Marks.

3        Wizards' common law trademarks in the Marks are protected under Washington law and

4   Counterclaim Defendants' use of those Marks is likely to cause confusion; Wizards is likely to

5   succeed on its state trademark infringement claim.

6   **B.**     **Wizards Will Suffer Irreparable Harm without a Preliminary Injunction.**

7        For Wizards' false designation Lanham Act claim, there is a presumption that Wizards will

8   be irreparably harmed by Counterclaim Defendants' continued infringement.  15 U.S.C. § 1116

9   ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable

10   harm upon a finding of a violation identified in this subsection in the case of a motion for a per-

11   manent injunction or upon a finding of likelihood of success on the merits for a violation identified

12   in this subsection in the case of a motion for a preliminary injunction or temporary restraining

13   order.").  Washington common law trademark law mirrors federal law, but Washington courts

14   have yet to consider whether this presumption of irreparable harm also applies in state common

15   law trademark cases.  For the avoidance of doubt, even setting aside this presumption, Wizards'

16   direct evidence demonstrates the many ways Wizards will be irreparably harmed without the issu-

17   ance of a preliminary injunction.

18        As described above, Wizards has substantial goodwill and a positive reputation relating to

19   the TSR and Star Frontiers Marks.  Wizards has invested heavily in these Marks over the years.

20   Schuh Decl. ¶ 9.  And beyond its general goodwill, Wizards has taken significant steps to foster

21   an inclusive and accepting gaming environment for all its consumers.  *Id.* ¶¶ 11-15.  RPGs are a

22   growing market and an important one for Wizards.  *Id.* ¶¶ 16-18.  Counterclaim Defendants' in-

23   fringing Star Frontiers New Genesis product flies in the face of these efforts by trafficking in racial

24   stereotypes and explicitly excluding trans representation in the game.  The Ninth Circuit has rec-

25   ognized that damage to goodwill is an irreparable harm.  *Rent–A–Center, Inc. v. Canyon Television*

26   *& Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  Business goodwill includes a com-

27   pany's reputation.  *See 2Die4Kourt v. Hillair Cap. Mgmt., LLC*, 692 F. App'x 366, 369 (9th Cir.

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 14

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  2017).  Unlike mere financial damage, Wizards' reputation will be damaged irreversibly by the

2  sale or distribution of Counterclaim Defendants' products using Wizards' Marks.

3       Courts in this district have found irreparable harm based on a loss of control of reputation

4  similar to what Wizards faces here.  In *Amazon.com Inc. v. Robojap Techs. LLC*, for example, the

5  court found "misuse of Amazon's trademarks has harmed Amazon's goodwill by misleading con-

6  sumers into believing that Amazon's trademarks were associated with a fraudulent and deceptive

7  tech support scheme."  No. C20-694, 2021 WL 5232130, at \*4 (W.D. Wash. Nov. 10, 2021) (per-

8  manently enjoining use of trademarks).  And the Ninth Circuit has recognized that "a specific

9  reputation"—like what Wizards has built through its efforts to promote inclusivity—has "intangi-

10  ble benefits" that are lost when consumers mistakenly attribute another's products to the source.

11  *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756-57 (9th Cir. 2018).  Consumers are

12  likely to be—and have already been—confused about whether Star Frontiers New Genesis is as-

13  sociated with Wizards, leading at least some consumers incorrectly to associate Wizards with rac-

14  ism and transphobia—positions it emphatically and publicly rejects.

15  **C.**      **The Balance of the Equities Favors Entering a Preliminary Injunction.**

16       "To determine which way the balance of the hardships tips, a court must identify the pos-

17  sible harm caused by the preliminary injunction against the possibility of the harm caused by not

18  issuing it."  *Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).  In

19  the Ninth Circuit, once a movant has established a likelihood of success on the merits in trademark

20  cases, the balance of equities weighs in favor of issuing a preliminary injunction because the only

21  harm to the defendant is ceasing its illegal activities.  *AECOM Energy & Constr., Inc. v. Morrison*

22  *Knudsen Corp.*, 748 F. App'x 115, 120 (9th Cir. 2018) ("If an injunction issues, Defendants will

23  merely be required to cease their illegal activities."); *Dr. Seuss Enters., L.P. v. Penguin Books*

24  *USA*, Inc., 924 F. Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997)

25  ("[W]here the only hardship that the defendant will suffer is lost profits from an activity which has

26  been shown likely to be infringing, such an argument in defense merits little equitable considera-

27  tion.") (citation omitted).  Further, Counterclaim Defendants knowingly used the Marks with

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  knowledge of Wizards' prior use.  *See Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 829

2  (9th Cir.1997) ("[A] defendant who knowingly infringes another's copyright 'cannot complain of

3  the harm that will befall it when properly forced to desist from its infringing activities.'" (citation

4  omitted)).  Counterclaim Defendants have no additional equities favoring allowing them to pro-

5  ceed in using Wizards' Marks on its bigoted and offensive products.  Moreover, Wizards has ex-

6  plained the significant irreparable harm it will suffer without this injunction.  *See supra*, Section

7  III(B).  This factor weighs in favor of issuing a preliminary injunction to stop Counterclaim De-

8  fendants' infringing activities.

9  **D.      A Preliminary Injunction Serves the Public Interest.**

10  "The public interest analysis for the issuance of a preliminary injunction requires district

11  courts to consider whether there exists some critical public interest that would be injured by the

12  grant of preliminary relief."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir.

13  2011) (citation omitted).  Enforcement of trademark rights serves the public interest.  *See State of*

14  *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc*., 425 F.3d 708, 715 (9th Cir.2005)

15  ("Trademarks protect the public from confusion by accurately indicating the source of the product.

16  They preserve a producer's good will in order that the purchasing public may not be enticed into

17  buying A's product when it wants B's product." (internal quotation marks and citation omitted)).

18  Where, as here, the movant has shown a likelihood of confusion, "the public interest also weighs

19  in favor of granting an injunction in this case."  *CytoSport, Inc. v. Vital Pharms., Inc*., 617 F. Supp.

20  2d 1051, 1081 (E.D. Cal.), *aff'd,* 348 F. App'x 288 (9th Cir. 2009).  This factor, too, favors a

21  preliminary injunction.

22  **E.      Wizards Seeks Narrow Injunctive Relief.**

23  In the Ninth Circuit, the scope of "an injunction must be narrowly tailored . . . to remedy

24  only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the

25  law."  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal quotation marks and

26  citation omitted).  Accordingly, Wizards does not seek a preliminary injunction on all Counter-

27  claim Defendants' infringing activities.  Counterclaim Defendants' general infringement can be

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   remedied through future injunctive relief and monetary damages which Wizards will prove at trial.

2   Instead, Wizards seeks a narrow injunction preventing Counterclaim Defendants' use of the Marks

3   on any iteration of the Star Frontiers New Genesis products.  Indeed, the imminent release of this

4   game will cause Wizards unknown, incalculable, and irreversible damage; harming its reputation

5   potentially so severely as to lose long time customers and prohibit new customers from ever con-

6   sidering purchasing Wizards' products.  The scope of this injunction is appropriately narrow and

7   any further narrowing would allow Counterclaim Defendants to slightly alter the product and con-

8   tinue releasing it, undermining the purpose of preliminary relief.

9                                          *       *       *

10      All four *Winters* factors favor granting a preliminary injunction: Wizards is likely to suc-

11   ceed on the merits of at least its two trademark claims; it will suffer irreparable harm to its reputa-

12   tion and goodwill, as well as its efforts to promote inclusivity in the RPG community, if Counter-

13   claim Defendants are not enjoined from publishing or distributing Star Frontiers New Genesis

14   products; a preliminary injunction is equitable because Counterclaim Defendants are wrongfully

15   using the Marks and are not entitled to profit from them; and the public interest favors protection

16   of Wizards' intellectual property.  A preliminary injunction thus is warranted to maintain the status

17   quo while this litigation is pending.

18                          **IV.    CONCLUSION**

19      The Court should enjoin Counterclaim Defendants from publishing, distributing, or other-

20   wise making available Star Frontiers New Genesis or any iteration of the game using the Marks.

21      DATED this 8th day of September, 2022.

22                              DAVIS WRIGHT TREMAINE LLP
                                Attorneys for Defendant
23                              Wizards of the Coast LLC

24
                                By: *s/ Lauren Rainwater*
25                                 Stuart R. Dunwoody, WSBA #13948
                                   Lauren Rainwater, WSBA #43625
26                                 MaryAnn T. Almeida, WSBA #49086
                                   Eric A. Franz, WSBA #52755
27                                 Rose McCarty, WSBA #54282
                                   920 Fifth Avenue, Suite 3300

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Seattle, WA  98104-1610
Tel: 206-622-3150 / Fax: 206-757-7700
Email:  stuartdunwoody@dwt.com
Email:  laurenrainwater@dwt.com
Email:  maryannalmeida@dwt.com
Email:  ericfranz@dwt.com
Email:  rosemccarty@dwt.com

WIZARDS' MOTION FOR A PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV) - 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax