The Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| TSR LLC, | Case No.: 2:21-cv-01705-SKV |
| Plaintiff, | **PLAINTIFF AND COUNTERCLAIM DEFENDANTS' RESPONSE TO DEFENDANT AND COUNTERCLAIM PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| WIZARDS OF THE COAST LLC, | |
| Defendant. | ORAL ARGUMENT REQUESTED |

WIZARDS OF THE COAST LLC,

          Counterclaim Plaintiff,

     v.

TSR LLC; JUSTIN LANASA; and
DUNGEON HOBBY SHOP MUSEUM LLC,

          Counterclaim Defendants.

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND FACTS ........................................................................................... 1

    A.   The Counterclaim Defendants have superior trademark rights to the
     Marks. ............................................................................................................ 1

        1.   Wizards allowed any rights it may have had in the Marks to be cancelled. ..... 1

        2.   TSR owns trademark rights to the TSR Mark and uses it in commerce. .......... 2

        3.   TSR has superior trademark rights to the Star Frontiers Mark and uses it in
         commerce. ............................................................................................. 3

        4.   TSR filed the lawsuit to resolve the parties' dispute over rights to the
         Marks. .................................................................................................... 4

    B.   TSR hired WTG to provide professional services for the SFNG Game. ................. 4

    C.   Third parties made unauthorized and offensive alterations to the SFNG
     Game and made those altered versions available publicly. ................................... 6

III.  PRELIMINARY INJUNCTION STANDARDS ........................................................ 7

IV.   ARGUMENT ............................................................................................................. 8

    A.   Wizards' Motion must be denied because it contains critical factual errors
     and relies upon misleading information and fabricated documents that
     cannot properly be used as evidence to support a ruling in Wizards' favor. .......... 8

        1.   Wizards' counsel had a responsibility to inquire into and ensure the
         veracity of the factual allegations and evidence underlying Wizards'
         Motion—a duty they did not fulfill. ................................................................. 9

        2.   Neither Wizards nor its counsel had seen TSR's SFNG Game transcript
         when the Motion was filed. ........................................................................... 9

        3.   Wizards relied heavily upon an unreliable source for evidence. ..................... 10

        4.   Wizards' Exhibit E was not created by the Counterclaim Defendants and
         does not accurately reflect the content of TSR's SFNG Game. ..................... 11

        5.   The Counterclaim Defendants did not play any role in releasing or
         distributing the fabricated transcript that appears in Wizards' Exhibit E. ....... 14

        6.   Wizards' Motion is also misleading with regard to the type of confusion
         expressed in online forums and on social media websites. ............................. 16

B.    Wizards' Motion must be denied because it does not establish Wizards' likelihood of success on the merits. ...................................................................... 17

    1.   Wizards cannot succeed on the merits of its false designation of origin claim. ........................................................................................................ 17

        a.   Wizards cannot demonstrate use in commerce. ............................ 17

        b.   Wizards cannot demonstrate a likelihood of confusion or show that the posted SFNG Game mockup was false or misleading. ..... 20

    2.   Wizards cannot succeed on the merits of its common law trademark infringement claim. ...................................................................................... 22

        a.   Wizards cannot succeed under federal law. .................................. 23

        b.   Wizards cannot succeed under Washington state law. .................. 23

C.    Wizards' Motion must be denied because it cannot establish irreparable harm, that the balance of equities tips in its favor, or that an injunction is in the public interest. ................................................................................................. 24

V.    CONCLUSION ............................................................................................................. 24

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
4
    414 F.3d 400 (2d Cir. 2005) ................................................................. 18

5
*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................ 8

6
7
*Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*,
    No. C20-670 MJP, 2021 WL 4319448 (W.D. Wash. Sept. 23, 2021) .................... 23

8
*BOKF, NA v. Estes*,
    923 F.3d 558 (9th Cir. 2019) .......................................................... 8, 24

9
10
*Bungie, Inc. v. Aimjunkies.com*,
    No. C21-811-TSZ, 2022 WL 1239906 (W.D. Wash. Apr. 27, 2022) .................... 17

11
12
*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
    498 U.S. 533 (1991) ...................................................................... 9

13
*Cooter & Gell v. Hartmarx Corp.*,
14
    496 U.S. 384 (1990)............................................................. 9, 10, 11, 14

15
*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ............................................................ 21

16
17
*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007) ..................................................... 17, 18, 23

18
*HDT Bio Corp. v. Emcure Pharm., Ltd.*,
19
    No. C22-0334JLR, 2022 WL 3018239 (W.D. Wash. July 29, 2022)..................... 8

20
*Mattel, Inc. v. Greiner & Hausser GmbH*,
    354 F.3d 857 (9th Cir. 2003) ............................................................. 8

21
22
*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ............................................................ 18

23
*Melwani v. Amazon.com, Inc.*,
24
    No. C21-1329RSM, 2022 WL 3683807 (W.D. Wash. Aug. 25, 2022)................... 23

25
*Miramar Brands Group, Inc. v. Fonoimoana*,
    No. CV 16-4224 PSG, 2017 WL 2903256 (C.D. Cal. June 13, 2017) .................. 19

26
*Official Airline Guides, Inc. v. Goss*,
27
    6 F.3d 1385 (9th Cir. 1993) ............................................................. 22

400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile (503) 802-5351

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ........................................................... 20

*Preminger v. Principi*,
  422 F.3d 815 (9th Cir. 2005) ........................................................... 7, 8

*Rachel v. Banana Republic, Inc.*,
  831 F.2d 1503 (9th Cir. 1987) ............................................................. 9

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007) ......................................................... 18, 19

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................. 7, 8, 9, 17

**Statutes**

15 U.S.C. § 1114(a) ........................................................................ 19

15 U.S.C. § 1125(a) ........................................................................ 19

15 U.S.C. § 1125(a)(1)(A) ............................................................ 17, 19

**Other Authorities**

Morrus' Unofficial Tabletop RPG News, *Does TSR3 Have Nazi Connections?*,
  https://www.enworld.org/threads/does-tsr3-have-nazi-connections.688528/ (last visited
  Sept. 29, 2022) ............................................................................ 20

Wizard Tower Games, https://wizardtowergames.com (last visited Sept. 26, 2022) ................. 5

**Rules**

FRCP 11(b) ................................................................................ 9, 15

FRCP 11(b)(1) ................................................................................ 9

FRCP 11(b)(3) ................................................................. 9, 10, 11, 14

FRE 602 .................................................................................... 15

RCW 19.77.010(11) ........................................................................ 23

**MEMORANDUM OF LAW**

# I.    INTRODUCTION

The Motion for a Preliminary Injunction ("Motion")[1] filed by Wizards of the Coast LLC ("Wizards") seeks to preliminarily enjoin TSR LLC ("TSR"), Justin LaNasa ("Mr. LaNasa"), and Dungeon Hobby Shop Museum LLC (the "Museum," and with TSR and Mr. LaNasa, the "Counterclaim Defendants") from "publishing, distributing, or otherwise making available Star Frontiers New Genesis or any iteration of the game using the" TSR and STAR FRONTIERS word marks ("TSR Mark" and "Star Frontiers Mark," and collectively the "Marks"). *Motion*, 2, 17. The Motion is largely based on erroneous information and fabricated documents (referred to herein as "Wizards' Exhibit E") that do not accurately reflect the content of TSR's Star Frontiers New Genesis game[2] ("SFNG Game"). Further, Wizards has failed to prove a substantial likelihood of prevailing on the merits, as it must do before preliminary relief can be imposed. Wizards' Motion is entirely without merit, and the Counterclaim Defendants respectfully request that it be denied.

# II.    BACKGROUND FACTS

**A.    The Counterclaim Defendants have superior trademark rights to the Marks.**

**1.    Wizards allowed any rights it may have had in the Marks to be cancelled.**

Wizards argues that it owns trademark rights to the Marks. *Id.* at 1–2. This claimed ownership is based upon Wizards' 1997 purchase of certain trademarks from TSR, Inc., including the "Cancelled TSR Mark" (United States Patent and Trademark Office ("USPTO") Registration No. 1681176,[3] filed in 1991 and registered in 1992 by TSR, Inc.) and the "Cancelled Star Frontiers Mark" (USPTO Registration No. 1245487, filed in 1982 and registered in 1983 by TSR, Inc.). *Declaration of Dayna J. Christian in Support of the Counterclaim Defendants' Response to Motion*

---

[1] This brief's references to the Motion refer to the version filed by Wizards on September 21, 2022 with its Praecipe to Correct Declaration of Elizabeth M. Schuh in Support of Wizards' Motion, which appears at Docket No. 35-2.

[2] While the Motion characterizes the SFNG Game as belonging to the Counterclaim Defendants, the SFNG Game was in fact created and is owned solely by TSR. *LaNasa Decl.*, ¶ 3.

[3] The Motion (citing to the Schuh Declaration, ¶ 3) states that the Cancelled TSR Mark is USPTO Registration No. 1242708, which is in error. *See Motion*, 13 n.2. That registration is for a TSR design mark submitted by Coleman Company, Inc. for air conditioners for recreational vehicles. *Christian Decl.*, ¶ 4. Counterclaim Defendants believe the correct USPTO registration number for the Cancelled TSR Mark is 1681176. *Id.* ¶ 5, Ex. A.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 1

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

*for a Preliminary Injunction* ("*Christian Decl.*"), ¶¶ 5–6, Ex. A and Ex. B.  Years later, on December 6, 2000, Wizards filed a Stock Purchase Agreement with the USPTO, and the USPTO recorded an assignment of the Cancelled TSR Mark and Cancelled Star Frontiers Mark from TSR, Inc. to Wizards.  *Id.* ¶ 7, Ex. C.  However, within a few years, Wizards failed to maintain the registrations by failing to submit to the USPTO the required proof that it was using the marks in interstate commerce.  *Id.* ¶¶ 5–6, Ex. A and Ex. B.  Wizards' Cancelled TSR Mark registration was cancelled by the USPTO on January 4, 2003, and the Cancelled Star Frontiers Mark registration was cancelled by the USPTO on April 17, 2004.  *Id.*

Similarly, Wizards allowed another design mark bearing the letters "TSR" (USPTO Registration No. 1802041) that it acquired in the 1997 TSR, Inc. purchase to be cancelled.  Once again, Wizards failed to maintain this design mark by submitting the required proof of use in interstate commerce, and the USPTO cancelled the registration on December 29, 2000.  *Id.* ¶ 8, Ex. D.  Since the cancellations in 2000, 2003, and 2004, there is no evidence in the USPTO's records of Wizards ever applying for or attempting to register Star Frontiers related marks, and only after the present lawsuit was filed on December 29, 2021 did Wizards apply for TSR related marks in February 2022.  *Id.* ¶¶ 9–12, Ex. E, Ex. F, Ex. G, and Ex. H.

Further, the Counterclaim Defendants' research reflected—and the Motion offers no evidence to the contrary—that Wizards has not *continuously* used the Cancelled TSR Mark or the Cancelled Star Frontiers Mark in commerce since its 1997 acquisition of TSR, Inc., nor has Wizards properly protected its exclusive use of those marks as would have been required for Wizards to maintain ownership of them,[4] as further discussed in Sections II(A)(2)–(4) below. *Declaration of Justin LaNasa in Support of the Counterclaim Defendants' Response to Motion for a Preliminary Injunction* ("*LaNasa Decl.*"), ¶ 4; *see Motion*.

**2.**     <u>**TSR owns trademark rights to the TSR Mark and uses it in commerce.**</u>

On August 19, 2020, finding no pending or issued trademark registrations with the USPTO,

---

[4] Non-parties Jayson Elliot, Ernie Gygax, and Luke Gygax used the TSR Mark between 2011 and 2019 without any known assertion of superior rights by Wizards.  *LaNasa Decl.*, ¶ 5.

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

TSR applied for a design mark bearing the letters "TSR" (USPTO Registration No. 6472675). *LaNasa Decl.*, ¶ 6, Ex. A.  No opposition was filed to attempt to block the registration, and the trademark was issued to TSR on August 31, 2021.  *Christian Decl.*, ¶ 13, Ex. I.

Also on August 19, 2020, TSR applied for a design mark bearing the letters "TSR" (USPTO Registration No. 6457615).  *La Nasa Decl.*, ¶ 7, Ex.  B.  Later that month, on August 31, 2020, TSR applied for another design mark bearing the letters "TSR" (USPTO Serial No. 90148524).  *Id.* ¶ 8, Ex. C.  Again, no opposition was filed to attempt to block these registrations. *Christian Decl.*, ¶ 14, Ex. J and Ex. K.  TSR chose to abandon those trademarks and notified the USPTO of the same.  *LaNasa Decl.*, ¶ 9, Ex. D and Ex. E.

On August 16, 2021, TSR filed a trademark application for the word mark "TSR" (USPTO Serial No. 90884176).  *Id.* ¶ 10, Ex. F.  That application is pending before the USPTO, and no opposition has been filed to attempt to block the application.  *Christian Decl.*, ¶ 15, Ex. L.

Having been granted USPTO registration of the design mark bearing the "TSR" letters on August 31, 2021 and having applied for multiple other "TSR" related trademarks without opposition, TSR has been using the TSR letters in commerce since March and April 2021 and continues to do so to the present day.  *LaNasa Decl.*, ¶ 11.

### 3. TSR has superior trademark rights to the Star Frontiers Mark and uses it in commerce.

On October 25, 2020, finding no pending applications for registration or existing registrations for the Star Frontiers Mark, TSR applied for the same for use in role playing games and dice games (USPTO Serial No. 90276506).  *Id.* ¶ 12, Ex. G.  On August 20, 2021, TSR applied for the same word mark for use in card games (USPTO Serial No. 90893809).  *Id.* ¶ 13, Ex. H.  As of August 24, 2022, TSR began offering playing cards bearing the Star Frontiers Mark on the websites located at https://tsrmuseum.com/onlinestore and https://tsr-hobbies.com.  *Id.* ¶ 14.  As with the TSR Mark applications and registration, no opposition has been filed to attempt to block these applications.  *Christian Decl.*, ¶ 16, Ex. M and Ex. N.

/ / /

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

**4.** __TSR filed the lawsuit to resolve the parties' dispute over rights to the Marks.__

On June 30, 2021—after the Counterclaim Defendants had been widely and openly using the TSR Mark publicly for over a year and a half and publicly stating an intent to use the Star Frontiers Mark since October 25, 2020—Wizards wrote to TSR claiming ownership of the Marks and stating that "Wizards has maintained continuous use of [the Marks]." *LaNasa Decl.*, ¶ 15. During the communications that followed, Wizards demanded that the Counterclaim Defendants cease using the Marks but refused to provide any evidence that it had continuously used the Marks in commerce dating back to its 1997 acquisition of TSR, Inc. *Id.* ¶ 16.  Now, the Motion retracts that statement of "continuous use" and reports to the Court that the use of the Marks does not date back nearly that far. *See Motion*, 2.

In those communications, Wizards generally stated that it had "licensed" the Marks to a third party—later revealed to be OneBookShelf, Inc. ("OneBookShelf")—but refused to provide a copy of the license agreement so the Counterclaim Defendants could assess the merit of Wizards' statements. *LaNasa Decl.*, ¶ 17.  The present Motion also reflects a distinct lack of such evidence; Wizards has not attached any licensing agreement to its Motion as evidence of any arrangement whereby OneBookShelf uses the Marks in commerce on behalf of Wizards. *See Motion*.  Further, even the Motion's statements on this point only claim that OneBookShelf has sold products bearing the TSR Mark "continuously since January 2013" and the Star Frontiers Mark "continuously . . . since November 2017"; the Motion does not account for any use of the Marks prior to those stated times. *See id.* at 2.  Wizards also has not offered proof that it has exerted efforts to protect exclusive use of the Marks in the marketplace throughout that time. *See Motion.*

After months of exchanging communications without reaching any resolution regarding the issue of the Marks' ownership, TSR filed the present lawsuit to officially clarify and determine which party owns and is entitled to use the Marks. *See Complaint* (Docket No. 1).

**B.** __TSR hired WTG to provide professional services for the SFNG Game.__

In October 2021, Mr. LaNasa met Don Semora ("Mr. Semora"). *LaNasa Decl.*, ¶ 18.  Mr. Semora is the owner of Wizard Tower Games ("WTG"), a gaming company that "help[s] fellow

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

game developers get their games designed, written and made [and offers] game publishing and development" services.  WIZARD TOWER GAMES, https://wizardtowergames.com (last visited Sept. 26, 2022).  Mr. LaNasa and Mr. Semora shared an interest in role-playing games, and they engaged in several business transactions through their entities.  *LaNasa Decl.*, ¶ 18.

Around this same time, TSR (by and through Mr. LaNasa) was collaborating with another gaming author, Dave Johnson ("Mr. Johnson"), to write a transcript for a new game, which would become the SFNG Game.[5]  *Id.* ¶ 19; *Declaration of Dave Johnson in Support of the Counterclaim Defendants' Response to Motion for a Preliminary Injunction* ("*Johnson Decl.*"), ¶ 3.

Mr. Semora offered WTG's printing, binding, and editing services to bring the SFNG Game transcript into a sellable format.  *LaNasa Decl.*, ¶ 21.  TSR and WTG agreed to a price for WTG's services, and Mr. Semora signed a non-disclosure agreement promising to keep the SFNG Game transcript confidential and not misappropriate it in any way.  *Id.* ¶ 22, Ex. I.

After months of writing, on February 6, 2022, TSR provided WTG with the first draft of the SFNG Game in the form of an editable Google Doc document.  *Id.* ¶ 23, Ex. J.  After claiming to have completed the editing process, WTG sent TSR five copies of the supposed edited version of the SFNG Game transcript, each in color printed three-ring binders, for review and approval; upon receipt, Mr. LaNasa made five exact photocopies of one of the binders.[6]  *Id.* ¶ 24, Ex. K.  The SFNG Game written by TSR and Mr. Johnson (and the WTG-edited draft thereof reflected in the binders) did not include any racist, transphobic, or otherwise offensive content.  *See id.* ¶¶ 23–25, Ex. J and Ex. K; *Johnson Decl.*, ¶ 4.

Neither any Counterclaim Defendant nor Mr. Johnson distributed the Google Doc document version of the SFNG Game to anyone except for Mr. Semora, who received a confidential copy protected by a non-disclosure agreement for the sole purpose of providing

---

[5] In October and November 2021, Michael Hovermale and his son, Logan Hovermale, voluntarily assisted Mr. LaNasa with the draft transcript, but no content contributed by them was used in future drafts.  *LaNasa Decl.*, ¶ 20.  By mid-January 2022, they were no longer affiliated with TSR or the Museum in any way.  *Id.*

[6] An exact copy of one of the binders that WTG provided to TSR is in the possession of TSR's counsel and can be made available for inspection by the Court and Wizards' counsel at oral argument on this Motion.  A copy of the binder's contents is included with this brief as Exhibit K to the LaNasa Declaration.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 5

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

printing, binding, and editing services. *LaNasa Decl.*, ¶ 26; *Johnson Decl.*, ¶¶ 5, 6.  TSR shared some of the three-ring binders and copies thereof with three close personal friends to receive their feedback on the draft.  *LaNasa Decl.*, ¶ 27.  The SFNG Game was never sold by any Counterclaim Defendant; although it appeared on the Museum's website, it was at all times listed as "Out of Stock." *Id.* ¶ 28; *see Declaration of Lauren Rainwater in Support of Wizards' Motion for a Preliminary Injunction* ("*Rainwater Decl.*"), ¶ 7.

**C.     Third parties made unauthorized and offensive alterations to the SFNG Game and made those altered versions available publicly.**

        In February 2022, Mr. LaNasa first learned that a version of the SFNG Game was available for download on the internet.[7] *LaNasa Decl.*, ¶ 29.  This version was an unauthorized parody of TSR's SFNG Game, entitled "Star Frontiers Not Genuine"; this modified version of TSR's transcript had been edited to contain derogatory and hateful remarks, which it falsely attributed to TSR.  *Id.* ¶ 30.  Mr. LaNasa immediately wrote to the online publisher, Lulu Press, Inc. ("Lulu Press"), and demanded that the game be taken down; Lulu Press removed it.  *Id.* ¶¶ 31–32, Ex. L.

        Mr. LaNasa also became aware that another altered and unauthorized version of the SFNG Game had been released online around July 19, 2022.  *Id.* ¶ 33.  He found this version posted on various websites, including www.gamer.com and www.techraptor.com.  *Id.*  As with the version posted by Lulu Press, this unauthorized modified version of the SFNG Game also contained disturbing content regarding race and gender issues.  *Id.*  This is the version of the SFNG Game that is included in the Motion as Wizards' Exhibit E and upon which Wizards relies as the basis for its request for injunctive relief.  *See Motion*, 3–5; *Rainwater Decl.*, ¶ 12, Ex. E.

        Neither the Counterclaim Defendants nor Mr. Johnson know where these unauthorized versions of the SFNG Game came from, and they do not agree with or approve of the offensive content included therein.  *LaNasa Decl.*, ¶ 34; *Johnson Decl.*, ¶ 8.  Mr. LaNasa shared paper copies of the binders received from WTG (that were non-editable and contained no objectionable racial

---

[7] The download is no longer available online.  Before the version was taken down, Mr. LaNasa preserved a copy. Due to the length of the document, it is not attached as an exhibit to this Motion, but it will be made available upon request by the Court or Wizards' counsel.  *Christian Decl.*, ¶ 17.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 6

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

or gender-based content) with only three close, personal friends. *LaNasa Decl.*, ¶ 27. TSR and Mr. Johnson shared the editable Google Doc version of their transcript with Mr. Semora alone. *Id.* ¶¶ 26, 38; *Johnson Decl.*, ¶ 11. Although the author(s) and/or distributor(s) of the unauthorized versions of the SFNG Game are unknown, it is telling that WTG produced to Wizards the version containing the offensive and hateful language that is presented to this Court as Wizards' Exhibit E. *See Rainwater Decl.*, ¶ 12, Ex. E. Access to an editable version of the SFNG Game transcript was limited to Mr. Semora, Mr. Semora has a well-documented personal vendetta against Mr. LaNasa (as fully detailed in Section IV(A)(3) below and in the LaNasa Declaration at paragraph 37), and Mr. Semora's company produced the offending version of the game transcript in this litigation. Thus, it now appears very likely that Mr. Semora modified TSR's documents, made them publicly available, and produced them to Wizards in an attempt to harm the Counterclaim Defendants. In turn, Wizards used these fabricated documents and likely relied upon Mr. Semora as its sole source of information forming the basis for its Motion.

### III.   PRELIMINARY INJUNCTION STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right" that may only be issued "upon a clear showing that the [party seeking the injunction] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008) (reversing and vacating a preliminary injunction). The party seeking a preliminary injunction bears the burden of proving the need for such relief. *Preminger v. Principi*, 422 F.3d 815, 823 n.5 (9th Cir. 2005) (affirming the denial of a preliminary injunction).

A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Under the Ninth Circuit's sliding scale test, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [moving party] can support issuance of a preliminary injunction, so long as the [moving party] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the*

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

*Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

This analysis is fact-dependent and requires a "case-by-case assessment of preliminary injunction factors rather than reliance on per se rules." *BOKF, NA v. Estes*, 923 F.3d 558, 565 (9th Cir. 2019). When the party seeking an injunction fails to "carr[y] its burden of persuasion by demonstrating a likelihood of success on the merits, or even the existence of serious questions on the merits," a preliminary injunction should not be imposed. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 869 (9th Cir. 2003) (affirming the denial of a preliminary injunction).

## IV.   <u>ARGUMENT</u>

### A.   <u>Wizards' Motion must be denied because it contains critical factual errors and relies upon misleading information and fabricated documents that cannot properly be used as evidence to support a ruling in Wizards' favor.</u>

To begin, Wizards' Motion cannot succeed because it is largely reliant upon erroneous facts and fabricated and misleading documents. This critical issue is pertinent and fatal to Wizards' arguments with regard to each of the four elements it must prove before a preliminary injunction may be imposed. *See Winter*, 555 U.S. at 20. It was Wizards' burden to bring forth in its Motion solid and reliable evidence sufficient to prove the propriety and necessity of a preliminary injunction in this case.[8] *See Preminger*, 422 F.3d at 823 n.5. It failed to do so, and it directly follows that injunctive relief is inappropriate under these circumstances.

The central argument at the heart of Wizards' Motion is that the "Counterclaim Defendants' to-be-released [SFNG Game] contains despicable content including blatantly racist and transphobic content." *Motion*, 1. However, in attempting to demonstrate the allegedly offensive nature of TSR's SFNG Game, Wizards has offered and relied upon false information and fabricated documents that do not accurately reflect TSR's SFNG Game; instead, the Motion's offered excerpts and exhibits reflect an unauthorized version of the SFNG Game that has been altered to incorporate the offensive content at issue in the Motion. *See LaNasa Decl.*, ¶¶ 23–24,

---

[8] Wizards is prohibited from raising new issues and evidence in its reply brief. *HDT Bio Corp. v. Emcure Pharm., Ltd.*, No. C22-0334JLR, 2022 WL 3018239, at *2 (W.D. Wash. July 29, 2022). The Counterclaim Defendants request that if Wizards attempts to introduce new issues or evidence in its reply brief, this Court use its discretion to strike such material. *See id.* at *2, *4. If the Court decides to consider any new material that Wizards may offer, the Counterclaim Defendants respectfully request that they be afforded an opportunity to respond to it. *See id.* at 2.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 8

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

Ex. J and Ex. K; *compare with Rainwater Decl.*, ¶ 12, Ex. E.  In fact, TSR's SFNG Game does not include the offensive content alleged by Wizards.  Thus, the arguments raised in Wizards' Motion are inaccurate and rendered moot.  The actual evidence does not support a finding that Wizards has satisfied the *Winter* factors, and a preliminary injunction cannot be imposed.

1. **Wizards' counsel had a responsibility to inquire into and ensure the veracity of the factual allegations and evidence underlying Wizards' Motion—a duty they did not fulfill.**

Attorneys are required to conduct a "reasonable inquiry" into the legal and factual basis of all pleadings, to ensure that all "papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (internal citations omitted); FRCP 11(b).  There is an "affirmative duty of investigation both as to law and fact" before making any filing with a court.  *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).  By presenting a motion to a court, an attorney certifies that (among other things) "it is not being presented for any improper purpose" and "the factual contentions have evidentiary support."  FRCP 11(b)(1), (3).  These basic certifications preserve the integrity of litigation and ensure that lawyers do not submit "baseless filings."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 552–53 (1991).

In the present instance, Wizards' counsel did not abide by these responsibilities and presented to this Court a Motion that is not well grounded in fact or supported by the evidence.  Specifically, Wizards' counsel failed to fully investigate the facts upon which its Motion's arguments are based and—whether knowingly or inadvertently—relied upon erroneous information and fabricated documents provided by unreliable sources.  This has resulted in the filing of a baseless Motion that is unsupported by the genuine evidence in this case.

2. **Neither Wizards nor its counsel had seen TSR's SFNG Game transcript when the Motion was filed.**

As a threshold matter, to the best of the Counterclaim Defendants' knowledge, neither Wizards nor its counsel had ever seen a copy of TSR's actual SFNG Game transcript before documents were produced by third parties in this case and shared with Counterclaim Defendants'

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

counsel on September 27, 2022—after the Motion was filed. *LaNasa Decl.*, ¶ 35; *Christian Decl.*, ¶ 18, Ex. O. The SFNG Game transcript is not available to the public, and Wizards has not been provided a copy by the Counterclaim Defendants or Mr. Johnson. *LaNasa Decl.*, ¶ 35; *Johnson Decl.*, ¶ 9. Aside from the Counterclaim Defendants, the only individuals who have received editable copies of the actual SFNG Game are Mr. Johnson (its co-author) and Mr. Semora (who received a copy subject to a non-disclosure agreement for the sole purpose of providing professional services). *LaNasa Decl.*, ¶ 36. TSR's SFNG Game transcript will be produced in discovery in this litigation, but this Motion was hastily filed and the parties have not yet exchanged document production in this case.

Without having reviewed the actual transcript of TSR's SFNG Game, Wizards and its counsel cannot purport to make good-faith allegations regarding what content it may or may not contain. Further, Wizards cannot represent that Wizards' Exhibit E is a document attributable or controlled by any of the Counterclaim Defendants. To the extent that Wizards' counsel has made such allegations in the Motion, those contentions are insufficiently investigated, without evidentiary support, and baseless. This fails to comply with Wizards' counsel's duty to investigate and confirm the alleged facts at the heart of the Motion they filed with the Court. *See Cooter & Gell*, 496 U.S. at 393 (requiring a reasonable inquiry into the facts underlying a pleading); FRCP 11(b)(3) (requiring that factual contentions alleged in a motion pleading have evidentiary support).

### 3.    <u>Wizards relied heavily upon an unreliable source for evidence.</u>

The Counterclaim Defendants believe that Wizards' primary source of information and evidence in support of its Motion is WTG, by and through Mr. Semora. The problem with using Mr. Semora as an uncorroborated primary source of information on these issues, however, is that Mr. Semora has a well-documented personal vendetta against the Counterclaim Defendants and is motivated to take harmful and retaliatory action against them.[9] *LaNasa Decl.*, ¶¶ 37, 40. For example, the business relationship between TSR and WTG fell apart; they are currently embroiled

---

[9] Mr. Semora's trustworthiness is further called into question by his criminal history. Mr. Semora has been convicted of multiple crimes involving larceny and false pretenses. *Christian Decl.*, ¶ 19, Ex. P.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 10

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

in a heated dispute regarding money that TSR paid to WTG for products and services, whether any such products or services were delivered, and if a refund or further payment is owed. *Id.* ¶ 37.

In light of this feud, it is no surprise that the unauthorized, altered, and offensive version of the SFNG Game that appears at Wizards' Exhibit E was produced to Wizards by Mr. Semora on behalf of WTG. *Rainwater Decl.*, ¶ 12, Ex. E. In addition to his hostility to the Counterclaim Defendants, Mr. Semora was the only known third party with editing authority and access to the original SFNG Game transcript. *LaNasa Decl.*, ¶ 38; *Johnson Decl.*, ¶ 11. It cannot be a coincidence that Wizards' Exhibit E came directly from Mr. Semora. As fully detailed below, it appears likely that Mr. Semora has distributed and provided Wizards with false information and fabricated SFNG Game documents to tarnish the Counterclaim Defendants, diminish their business reputations, and gain an advantage over them in the marketplace. *See Section IV(A)(4).*

Further, regardless of Mr. Semora's intentions, Wizards' counsel had a duty to investigate the veracity of the information and documents provided by Mr. Semora prior to using them as the basis for their Motion. *See Cooter & Gell*, 496 U.S. at 393; FRCP 11(b)(3). Especially given the contentious relationship between Mr. Semora and the Counterclaim Defendants, Wizards' counsel should have subjected any allegations made or documentation provided by Mr. Semora to heavy scrutiny before relying on them in a pleading—especially a pleading as serious as a motion seeking an injunction. Their failure to do so resulted in the filing of a baseless Motion that lacks a proper factual foundation.

### 4. <u>Wizards' Exhibit E was not created by the Counterclaim Defendants and does not accurately reflect the content of TSR's SFNG Game.</u>

The Motion presents Wizards' Exhibit E to this Court and alleges that it—and the offensive content contained therein—was created by the Counterclaim Defendants. *See, e.g.*, *Motion*, 4–5. Nothing could be further from the truth. In fact, the Counterclaim Defendants did not create Wizards' Exhibit E, it does not reflect the content of TSR's SFNG Game, and they do not approve of any of the offensive content contained therein. *LaNasa Decl.*, ¶¶ 34, 39.

While the Counterclaim Defendants cannot be certain of who created Wizards' Exhibit E,

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

they strongly suspect that Mr. Semora fabricated this document and provided it to Wizards in an attempt to harm them. *Id.* ¶ 40. As discussed above, Mr. Semora was the only known third party with editorial access to the transcript of TSR's SFNG Game. The draft game authored by Mr. LaNasa and Mr. Johnson was submitted to Mr. Semora for editing via a Google Doc document. *Id.* ¶¶ 23, 41. The metadata on that file shows that the last modification thereto occurred on February 6, 2022 at 10:54 p.m. and notes that "George Johnson" (referring to Mr. Johnson) was the author. *Id.* ¶ 41, Ex. M. When the last version of the SFNG Game transcript provided by TSR (*id.* ¶ 23, Ex. J) is compared to the version presented in Wizards' Exhibit E, it is clear that the objectionable material that appears in Wizards' Exhibit E is not present in the Google Doc version that was last touched by TSR and Mr. Johnson.

After Mr. Semora claimed to have completed the editorial process, WTG sent TSR the three-ring binders containing the supposedly complete edited version of the SFNG Game transcript (including the character sheets at issue in the Motion) for TSR's review and approval, as reflected by text messages between Mr. LaNasa and Mr. Semora. *Id.* ¶ 42, Ex. N. As reflected by the SFNG Game that appears in these binders—the final version in which any of the Counterclaim Defendants or Mr. Johnson had any input—the SFNG Game written by TSR and Mr. Johnson did not include any racist, transphobic, or otherwise offensive content. *See id.* ¶ 24, Ex. K.

As critical to the Motion, Wizards' Exhibit E includes a character description page that contains offensive racial content describing a "Negro" character race. *See, e.g.*, *Motion*, 4; *Rainwater Decl.*, ¶ 12, Ex. E (page 59). The pertinent excerpt submitted by Wizards, which appears at page 59 of the Rainwater Declaration document, is as follows:

- Reptilians(Draconid)(HUMANOID-CLASS) - Tall scaly humanoids start with Shapechange abilities.
- Negro( Sub race Ulfar)(HUMANOID-CLASS) -Tall, thick bodied, dark skinned even purple dark, brown-eyed race with large strength average intelligence ALL Attributes are in the 10+ range, except intelligence which is maximum a +9.
- Nordic( Ulfar)(HUMANOID-CLASS) -Tall, blonde, blue-eyed race with exceptional attributes and powers ALL Attributes are in the 13+ range.

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

However, a review of the corresponding character description sheet in the final transcript binder that WTG provided to TSR clearly reveals that TSR's SFNG Game does not include the above-quoted offensive description of the "Negro" race, as shown below. *LaNasa Decl.*, ¶ 24, Ex. K at 63–64.   Again, this is the final version of the SFNG Game in which the Counterclaim Defendants or Mr. Johnson had any input. *Id.* ¶ 25; *Johnson Decl.*, ¶¶ 10, 13.   Further, it is explicitly clear that the document is a "BETA TEST COPY NOT FOR DISTRIBUTION." *LaNasa Decl.*, ¶ 24, Ex. K at 1.



Unauthorized modifications also appear elsewhere in Wizards' Exhibit E.  For example, the document purports to include content referring to transgender individuals in an offensive way by stating the following under the "gender" description for a "Humanoid" to exclude transgender people: "Male/Female ONLY in the galaxy there are no trans races."  *See Motion*, 4–5; *Rainwater Decl.*, ¶ 12, Ex. E, p. 60.  However, the phrases "no trans races" or "trans-gender" do not appear anywhere in the transcript of TSR's SFNG Game.  *See LaNasa Decl.*, ¶ 24, Ex. K.  Wizards also inaccurately suggests (*Rainwater Decl.*, ¶ 12, Ex. E (pages 61–65)) that other highlighted text refers to humans when in fact, the "gender" descriptions provided in Wizards' Exhibit E are for classes called "D'Arelit" which are "short, rubbery aliens," "Ur'yed" which are creatures that

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 13

"look like an Earth 'robust raccoon'," "Cyborg" which are "90% machine and 10% biology," "Multar," and "Zetaians." *See LaNasa Decl.*, ¶ 24, Ex. K at 71, 74, 82, 85, and 88. Again, these transgender discriminatory phrases appear nowhere in the TSR SFNG Game regardless of whether the game is describing Humanoids, aliens, racoons, or Cyborgs. *See id.*

When TSR's actual SFNG Game is compared with Wizards' Exhibit E, it is immediately apparent that TSR's original transcript does not contain the offensive content cited by Wizards. Instead, Wizards' Exhibit E is an unauthorized modification of the SFNG Game that has been fabricated to include inflammatory content and associate that content with the Counterclaim Defendants, seemingly to sully their reputation in the gaming community. Neither the Counterclaim Defendants nor Mr. Johnson made these edits. *Id.* ¶ 39; *Johnson Decl.*, ¶ 13. The only other known party with access to an editable version of the original transcript is Mr. Semora, and the Counterclaim Defendants believe it is very likely that he made these unauthorized modifications to the SFNG Game in an effort to tarnish their reputation. *LaNasa Decl.*, ¶ 40.

Wizards' Ex. E is a fabricated and inauthentic document, and it cannot constitute valid evidence to support a ruling in Wizards' favor. Once again, Wizards' counsel has failed to abide by their duty to investigate the accuracy and authenticity of the alleged facts and evidence underlying their Motion. *See Cooter & Gell*, 496 U.S. at 393; FRCP 11(b)(3).

## 5.    The Counterclaim Defendants did not play any role in releasing or distributing the fabricated transcript that appears in Wizards' Exhibit E.

Wizards' Motion is also incorrect and misleading with regard to another critical fact. The Motion alleges that the "Counterclaim Defendants have distributed copies of its game for 'play testing,' and [the Museum's] website has a listing of the game for sale—albeit with an 'out of stock' description." *Motion*, 1. In fact, at no time have the Counterclaim Defendants released or distributed to the public—for play testing or otherwise—any copies of the altered version of the SFNG Game that appears in Wizards' Exhibit E. *LaNasa Decl.*, ¶ 43. Neither the Counterclaim Defendants nor Mr. Johnson ever gave Mr. Semora (or anyone else) permission to publish, release, or distribute the SFNG Game—and certainly not a version that had been modified to include

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 14

offensive and inflammatory content. *Id.* ¶ 44; *Johnson Decl.*, ¶ 12.

The only versions of the SFNG Game that represent TSR's and Mr. Johnson's work are (1) the draft transcript that was provided to Mr. Semora via Google Doc and (2) the version that TSR reviewed in the three-ring binders provided to it by WTG (neither of which contained offensive content). *See LaNasa Decl.*, ¶ 45; *see also Johnson Decl.*, ¶ 13. This TSR draft version (as reflected in the binder from WTG) was approved for a small private release by TSR to only three close personal friends to obtain their input on the draft; these individuals received non-editable, printed copies of the draft SFNG Game transcript. *LaNasa Decl.*, ¶ 27.

TSR later learned that a different version of the game had been leaked to the public by an unknown source. *Id.* ¶¶ 29–34. That version, depicted in Wizards' Exhibit E, had been edited without authorization to include derogatory content; TSR and Mr. Johnson were as outraged by this content (and its distribution) as Wizards now is. *Id.* ¶ 34; *Johnson Decl.*, ¶ 8. Aside from TSR and Mr. Johnson, the only known person who had access to an editable version of the SFNG Game was Mr. Semora through WTG, who had received a confidential copy pursuant to a non-disclosure agreement for the sole purpose of providing professional services to aid TSR in finalizing the game. *LaNasa Decl.*, ¶¶ 36, 38. Thus, the Counterclaim Defendants can only surmise that Mr. Semora is likely responsible for releasing this version of the SFNG Game to the public, despite his confidentiality obligations. *Id.* ¶ 40. To the extent that it could, TSR took prompt action to have unauthorized versions of the transcript removed where they appeared online. *Id.* ¶ 46. These postings were unauthorized by and outside the control of the Counterclaim Defendants. *Id.*

Ms. Rainwater's Declaration includes a false statement on this point that should be disregarded by this Court. In her sworn declaration, Ms. Rainwater inaccurately states that in July 2022, gaming publications began covering the play test release of "a preview copy [of the SFNG Game] that *TSR LLC had distributed* to players who were interested in trying the game," which "included racist and transphobic content." *Rainwater Decl.*, ¶ 10 (emphasis added). In fact, Ms. Rainwater does not have personal knowledge of (1) whether TSR did or did not distribute the "preview" game at issue (it did not), and (2) what the actual content of TSR's unreleased and

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

private draft game was (it did not match the released game version she references); accordingly, she should not be making sworn statements to this Court on those points.  *See* FRCP 11(b); FRE 602; *Rainwater Decl.*, ¶ 1 (claiming personal knowledge of all facts stated in the declaration).  In actuality, the altered SFNG Game version that appears at Wizards' Exhibit E is not a preview copy of TSR's work product; TSR never created, distributed, or authorized distribution of that document to anyone.  *LaNasa Decl.*, ¶ 47.

Further, the SFNG Game was never sold by any of the Counterclaim Defendants.  *Id.* ¶ 48.  Although the SFNG Game appeared on the Museum's website, it was at all times listed as "Out of Stock."  *See Rainwater Decl.*, ¶ 7; *LaNasa Decl.*, ¶ 48.  In fact, the image depicted in paragraph 7 of the Rainwater Declaration is a mere digital mock-up of a book, rather than an actual book that is currently in existence and available for sale.  *LaNasa Decl.*, ¶ 49.  Once again, Ms. Rainwater's declaration is misleading, and Wizards' arguments are unfounded in fact.  The "product" that Wizards has moved this Court to prohibit the Counterclaim Defendants from making available does not even exist.  *Id.*

### 6.   Wizards' Motion is also misleading with regard to the type of confusion expressed in online forums and on social media websites.

Finally, Wizards' Motion is misleading with respect to the nature and level of confusion that members of the public have expressed in online forums and social media.  *See, e.g.*, *Motion*, 11–12; *Rainwater Decl.*, ¶ 13.  The internet is replete with discussions, postings, and comment chains regarding issues relating to this litigation.  Throughout the world, anyone can post, respond, and contribute to these online conversations as they see fit—without regard to their level of knowledge or understanding of the issues.  For example, in a cursory review of online forums, the Counterclaim Defendants' counsel found a posting expressing doubt regarding whether Wizards' counsel actually presented TSR's current SFNG Game to this Court and noted that it was "rumored" that the version Wizards possessed was not the correct document.  *Christian Decl.*, ¶ 20, Ex. Q.  There is a vast supply of such comments on the internet, some of which support Wizards' position, and some of which support the Counterclaim Defendants—and very few of

which are based on actual knowledge.  These types of blog posts are not authoritative resources, and they should be assigned very limited weight in the Court's consideration of this Motion.

**B.** **Wizards' Motion must be denied because it does not establish Wizards' likelihood of success on the merits.**

A party seeking a preliminary injunction must first establish that it is likely to succeed on the merits of the causes of action at issue.  *Winter*, 555 U.S. at 20.  If the moving party "fails to even raise serious questions about its likelihood of success, an injunction may not issue." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).  Here, Wizards has not proved—and cannot prove—that it is likely to succeed on the merits.  Wizards argues that it is likely to succeed on its false designation of origin and trademark infringement claims.  *Motion*, 7– 8.  However, Wizards is not likely to prevail on either claim; in fact, there are not even serious questions in that regard.  It directly follows that preliminary relief is inappropriate in this case.

**1.** **Wizards cannot succeed on the merits of its false designation of origin claim.**

To prevail on its false designation of origin claim, Wizards must prove that the Counterclaim Defendants have: (1) used in commerce; (2) a word, term, name, symbol, device, false designation of origin, or false or misleading description or representation of fact; which (3) is likely to cause confusion/mistake or to deceive as to the affiliation, connection, or association of the Counterclaim Defendants with Wizards, or as to the origin, sponsorship, or approval of the Counterclaim Defendants' goods, services, or commercial activities by Wizards.  *See* 15 U.S.C. § 1125(a)(1)(A).  An unregistered trademark may be entitled to such protection under the Lanham Act if necessary to avoid confusion regarding the origin or source of goods or services among consumers in the marketplace.  *Bungie, Inc. v. Aimjunkies.com*, No. C21-811-TSZ, 2022 WL 1239906, at *3 (W.D. Wash. Apr. 27, 2022).  Wizards has not demonstrated that it can prove the elements of this claim, and it cannot do so.

**a.** **Wizards cannot demonstrate use in commerce.**

The first element of a false designation of origin claim is "use in commerce."  *See* 15 U.S.C. § 1125(a)(1)(A).  Wizards' cause of action fails at this very first step.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 17

To constitute use in commerce, a party's actions must have been "made to promote any competing service or reap any commercial benefit." *Freecycle Network, Inc.*, 505 F.3d at 903.  As used in trademark protection laws, use in commerce "refers to a use of a famous and distinctive mark *to sell goods* other than those produced or authorized by the mark's owner" and typically involves the sale of "commercial products" bearing the mark "to consumers in the marketplace." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (emphasis added); *see also 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005) (quoting a treatise that states: "a defendant who does not sell . . . the trademarked product of another, is not a trademark infringer or unfair competitor by virtue of such use").

Here, Wizards has not offered and cannot offer evidence to prove that use in commerce occurred because it did not.  The SFNG Game has never been available for sale to consumers in the marketplace, and the Counterclaim Defendants have not sold (or attempted to sell) a single copy of the SFNG Game to anyone. *LaNasa Decl.*, ¶ 50.  The image of the SFNG Game depicted on the Museum and TSR websites was merely a digital mockup of what the future game book might look like, and is not an actual product that could even potentially be offered for sale at this point—there is not one page of text between the digital covers. *Id.* ¶ 49; *see also id.* ¶ 51, Ex. O; *id.* ¶ 55, Ex. P.  Further, the photo (which has now been voluntarily removed as a good faith gesture pending the outcome of this Motion) was at all times labeled as "Out of Stock," making it clear that the item depicted therein was not available for purchase. *Id.* ¶¶ 28, 48.  A consumer who visited the website could not click on the item, add it to a cart, pre-order it, or in any way interact with the photo. *Id.* ¶ 50.  No Counterclaim Defendant has reaped any commercial benefit from TSR's efforts to create the SFNG Game. *Id.* ¶ 52.

Further, the legal authorities that Wizards relies upon in support of its argument on this point are inapplicable in the present case. *See Motion*, 8.  First, Wizards relies upon *United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007), for the proposition that the Counterclaim Defendants' posting of a photo on the internet constituted use in commerce. *Motion*, 8.  However, *Sutcliffe* is a criminal case addressing the use of the internet to transmit interstate threats. *Sutcliffe*, 505 F.3d

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

1    at 950.  The *Sutcliffe* decision's statement that the internet is a channel of interstate commerce for

2    the criminal purposes addressed therein (*id.* at 952–53) cannot be transformed to mean that the

3    mere posting of a mockup of an item on the internet constitutes use in commerce under the false

4    designation of origin provisions of the Lanham Act.

5        Second, Wizards relies upon *Miramar Brands Group, Inc. v. Fonoimoana*, No. CV 16-

6    4224 PSG, 2017 WL 2903256 (C.D. Cal. June 13, 2017), for its assertion that non-sales activities

7    can constitute use in commerce.  *See Motion*, 8.  To begin, this decision comes from the Central

8    District of California and is not binding upon this Court.  Further, the portion of the *Miramar*

9    decision relied upon by Wizards in fact tests whether non-sales activities may establish prior use

10   for the purpose of determining priority of use in a trademark infringement action under 15 U.S.C.

11   § 1114(a), and not whether the required elements of a false designation of origin claim under 15

12   U.S.C. § 1125(a) have been satisfied (the issue in the present case).  *See Miramar Brands Grp.,*

13   *Inc.*, 2017 WL 2903256, at *4–8.  Even if *Miramar* was applicable in the present case, the facts

14   are distinguishable.  In *Miramar*, the court stated that for purposes of 15 U.S.C. § 1114(a), "a party

15   may establish prior commercial use simply by showing 'extensive' advertising and non-sales

16   activity."  *Id.* at *6.  The court noted, however, that "mere advertising by itself may not establish

17   priority of use."  *Id.*  The evidence in *Miramar* included "advertising and media coverage in the

18   trade magazines and broadcast events, combined with the licensing agreements and declarations

19   attesting to related apparel sales" over a span of many years.  *Id.*  The present case involves no

20   such "extensive" efforts and covers a much shorter period of time; TSR posted one photo on the

21   internet, of a digital book mockup that was at all times clearly labeled as "Out of Stock."  *LaNasa*

22   *Decl.*, ¶¶ 28, 48.  This is insufficient to establish "use in commerce" for the purposes of a false

23   designation of origin claim under 15 U.S.C. § 1125(a).

24       Thus, the first element of Wizards' false designation of origin claim cannot be satisfied.

25   Wizards has not and cannot demonstrate any "use in commerce" by the Counterclaim Defendants

26   with regard to the issues raised in the Motion.  It directly follows that Wizards cannot demonstrate

27   a likelihood of success on its false designation of origin claim.  The analysis need go no further,

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

1  and preliminary relief cannot be imposed under these circumstances.

2          **b.      Wizards cannot demonstrate a likelihood of confusion or show that the**
3                  **posted SFNG Game mockup was false or misleading.**

4          Similarly, Wizards' false designation of origin claim cannot succeed because it cannot

5  prove that TSR's SFNG Game is likely to cause confusion among consumers, or that the posted

6  photo of the game mockup was false or misleading in any way.  *See* 15 U.S.C. § 1125(a)(1)(A).

7          Wizards' Motion accurately summarizes the eight *Sleekcraft* factors to be considered in

8  assessing the likelihood of consumer confusion, and they need not be reiterated here.  *See Motion*,

9  8–9.  These factors are "fluid" and used to "channel the analytical process," but they do not

10  individually dictate a result because "it is the totality of facts in a given case that is dispositive."

11  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (internal citations and

12  quotation marks omitted).  Notably, to prevail on this point, Wizards "must show that a *reasonably*

13  *prudent consumer* in the marketplace" would be confused with respect to the origin of the SFNG

14  Game.  *See id.* (emphasis added).

15          Wizards' argument on this element overlooks critical factors that render it unable to

16  succeed.  First, Star Frontiers books have not been published since the last edition was released by

17  TSR, Inc. in 1985.  *LaNasa Decl*., ¶ 53.  Wizards admits that its alleged license to OneBookShelf

18  was not associated with any Star Frontiers' related sales until November 2017—two decades after

19  Wizards acquired rights to the Cancelled Star Frontiers Mark from TSR, Inc.  *See Motion*, 1–2.

20  Now, it appears that vintage, used copies of the 1980s-era publication can be purchased online

21  through Amazon, eBay, AbeBooks.com, mercari.com, and a host of other websites; Wizards has

22  not proffered an existing license associated with sales through any of these websites.  *Christian*

23  *Decl*., ¶ 21.  Due to the large gap in time—over thirty years—between the last publication of TSR,

24  Inc.'s books bearing the Cancelled Star Frontiers Mark and TSR's current SFNG Game bearing

25  the words "Star Frontiers," it is unlikely that a reasonably prudent consumer in the gaming

26  marketplace would be confused about the origin of the SFNG Game.

27          Next, Wizards claims to present evidence of consumer confusion.  *Motion*, 11–12.

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 20

1 | However, a closer look at Wizards' evidence on this point reveals that it does not actually support

2 | their claim.  The three clips of chat room comments included in paragraph 13 of the Rainwater

3 | Declaration are far from clear proof of consumer confusion.  The first post, dated May 17, 2022,

4 | by "cbwjm" is taken out of context.  The chat room where "cbwjm" posted was started by "Morrus"

5 | on May 17, 2022, with the subject line "Does TSR3 Have Nazi Connections?"  MORRUS'

6 | UNOFFICIAL  TABLETOP  RPG  NEWS,  *Does  TSR3  Have  Nazi  Connections?*,

7 | https://www.enworld.org/threads/does-tsr3-have-nazi-connections.688528/ (last visited Sept. 29,

8 | 2022).  TSR is often referred to online as "TSR3" or "NuTSR," and these nicknames clearly

9 | distinguish TSR from the former TSR, Inc.  *LaNasa Decl.*, ¶ 54.   Thus, this post does not

10 | demonstrate consumer confusion at all—to the contrary, "cbwjm" clearly understands the

11 | difference between the former TSR, Inc. (founded by Gary Gygax), and TSR/TSR3 and further

12 | believes that "someone was trying to discredit Gary Gygax" by posting hateful content online.  *See*

13 | *Rainwater Decl.*, ¶ 13.

14 | Similarly, in the second post provided by Wizards, "warrioratwork" states that the leaked

15 | version of the SFNG Game was "Not Star Frontiers at all.  It's negative hype bait," and "guyzero"

16 | states that "[t]his thing has zero to do with Star Frontiers."  *See id.*  Likewise, in the third post,

17 | "OmegaLiquidX" posts a comment stating that "[i]t's important to note that this racist bullshit has

18 | no connection to Star Frontiers."  *Id.*  Again, these comments clearly reflect that consumers in the

19 | gaming community are not confused; they understand that products from TSR, such as TSR's

20 | SFNG Game (although not the version that appeared online) are likely entirely different from the

21 | original Star Frontiers and not affiliated with Wizards, and they further understand that the

22 | offensive version of the game that was leaked online is inauthentic "negative hype bait" that is not

23 | actually affiliated with either Wizards or TSR, Inc.  *See id.*

24 | Notably, even if these three blog posts did demonstrate actual consumer confusion, isolated

25 | and anecdotal instances of confusion are *de minimis* and "unpersuasive as to the ultimate issue of

26 | likelihood of confusion."  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002).

27 | The Ninth Circuit Court of Appeals has upheld a district court's finding that seven instances of

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 21

actual confusion was *de minimis* and stated that there was "no persuasive evidence of actual confusion" under those circumstances. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993). Here, Wizards' three misrepresented posts from two chat rooms are *de minimis* at best and are insufficient to support a finding that consumer confusion is likely.

The lack of potential for consumer confusion is further evidenced by a visual inspection of the products at issue. The covers of the vintage, 1980s Star Frontiers publications bear a distinctive 1980s-era color scheme, artwork, depictions of characters, and layout. *Christian Decl.*, ¶ 22, Ex. R. The title is displayed with white lines above and below it, and the text uses distinctive, elongated "R's" in the word Frontiers. *Id.*

The mockup photo posted online by TSR has an entirely different look and feel—and it very clearly states that it is a "New Genesis," indicating that the idea is "new" and the word "genesis" conveys a concept that this is something new coming into being. *LaNasa Decl.*, ¶ 55, Ex. P. This concept is repeated in the tag line "The Science Fiction Classic Returns," clearly indicating that the game is a new spin on a vintage product. *Id.* Also, the description posted online says "[a]ll new . . . with a twist," and the artwork and coloring are new and modern. *See Rainwater Decl.*, ¶ 7. The look and feel of the mockup photo are very different from the vintage 1980s publications; the art is comprised of futuristic looking images, bright and modern colors, and a newly-created character featured in the center. The logo at the bottom of the mockup is a lizard holding a spear, which is new art created especially for and registered to TSR (USPTO Registration No. 6457620) and not in any way affiliated with Wizards or TSR, Inc. *LaNasa Decl.*, ¶ 56; *Christian Decl.*, ¶ 23, Ex. S. A side-by-side comparison clearly shows that these products do not look the same; reasonably prudent consumers in the gaming marketplace will not confuse them.

### 2. Wizards cannot succeed on the merits of its common law trademark infringement claim.

Both Wizards' counterclaim pleading and its Motion are unclear with respect to whether its common law trademark infringement claim is brought under Washington state law or an entitlement to protection under federal law for an unregistered trademark. Either way, Wizards

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

1  cannot succeed on the merits of this cause of action.

2  **a.**   **Wizards cannot succeed under federal law.**

3  Under the Lanham Act, a trademark infringement claim for a *registered* trademark includes

4  the same elements as a claim for false designation of origin to protect either a USPTO-registered

5  or an unregistered trademark.  *See Freecycle Network, Inc.*, 505 F.3d at 902; *see also Melwani v.*

6  *Amazon.com, Inc.*, No. C21-1329RSM, 2022 WL 3683807, at *3 (W.D. Wash. Aug. 25, 2022).

7  Because Wizards has no USPTO registered trademarks for either TSR or Star Frontiers (*see*

8  Section II(A)(1)), no Lanham Act protection from infringement is available.  The only remaining

9  federal protection for an unregistered trademark is marketplace protection, such as a claim for false

10  designation.  Thus, any trademark claim Wizards claims to have under federal law is limited to its

11  false designation claim, which fails as detailed in Section IV(B)(1).

12  **b.**   **Wizards cannot succeed under Washington state law.**

13  As a threshold matter on this claim, Wizards has provided no proof of any trademark

14  registration for either of the Marks in the State of Washington.  *See Motion*.  Counsel for the

15  Counterclaim Defendants has searched online and was unable to locate any such Washington filing

16  by Wizards.  *Christian Decl*., ¶ 24.  Therefore, the only trademark rights Wizards may have under

17  the laws of the State of Washington are common law trademark protections.

18  To prevail on a common law trademark infringement claim under Washington law,

19  Wizards must prove that (1) it has a protectible trademark, and (2) there is a likelihood of consumer

20  confusion.  *See Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*, No. C20-670 MJP, 2021 WL 4319448, at

21  *2 (W.D. Wash. Sept. 23, 2021).  Wizards cannot satisfy either of these elements for the reasons

22  set forth in Sections II(A)(1) and IV(B)(1) above.

23  Further, to establish a claim under the laws of the State of Washington, Wizards would

24  need to demonstrate its use of the Marks in commerce *in Washington*.  *See* RCW 19.77.010(11)

25  ("A trademark shall be deemed to be 'used' in this state when it is placed in the ordinary course of

26  trade . . . on the goods . . . and such goods are sold or otherwise distributed in this state, or when it

27  is used or displayed in the sale or advertising of services rendered in this state.").  It has not done

RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION - Page 23

so.  Wizards alleges only that its purported licensee, OneBookShelf, is licensed to sell products bearing the Marks, but it offers no evidence that any sales have occurred *in Washington*.  *See Motion*.  Even if Wizards could demonstrate its use of the Marks in commerce in the State of Washington, it would only be entitled to prevent others from using them *in Washington*, yet it offers no proof whatsoever that any of the Counterclaim Defendants have used the Marks in commerce in Washington.  *See id.*

Wizards has failed to establish the core issue of what, if any, trademark rights it is entitled to enforce by common law in the State of Washington.  Without this cornerstone, the Motion fails to establish that Wizards is likely to succeed on the merits of any infringement action for unregistered trademark rights—either nationally or in the State of Washington.

**C.**   **Wizards' Motion must be denied because it cannot establish irreparable harm, that the balance of equities tips in its favor, or that an injunction is in the public interest.**

In addition to demonstrating a likelihood of success on the merits, Wizards must also prove that "it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.  *See BOKF, NA*, 923 F.3d at 565.  Wizards cannot prove any of these remaining elements because the factual errors detailed above render them unable to do so.  Each of Wizards' concerns regarding its reputation and goodwill arise from Wizards' Exhibit E.  If Wizards is entitled to protection from those concerns, it needs to seek an injunction against the party or parties that wrote Wizards' Exhibit E and/or that released it to the public.  None of the Counterclaim Defendants are the correct injunction targets.  Injunctions are powerful tools that severely impact the marketplace, and baseless claims that are not supported by the law are not in the public interest.

## V.   CONCLUSION

For the reasons set forth above, the Counterclaim Defendants respectfully request that Wizards' Motion be denied.  The Motion is entirely without merit, and a preliminary injunction should not be imposed.

/ / /

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351

1    Dated: October 10, 2022

2                                            IMMIX LAW GROUP PC

3

4                                            Dayna J. Christian, WSB No. 32459
                                             400 Winslow Way E., Suite 210
5                                            Bainbridge Island, WA 98110
                                             Phone: (503) 802-5533
6                                            Facsimile: (503) 802-5351

7                                            *Attorneys for Plaintiff and Counterclaim Defendant
                                             TSR LLC and Counterclaim Defendants Justin
8                                            LaNasa and Dungeon Hobby Shop Museum LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2022, I caused to be served a true copy of the foregoing

**PLAINTIFF AND COUNTERCLAIM DEFENDANTS' RESPONSE TO DEFENDANT**

**AND COUNTERCLAIM PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

on the party or attorneys listed below, by email:

Stuart R. Dunwoody
Lauren B. Rainwater
Eric A. Franz
MaryAnn T. Almeida
Rose McCarty
Lisa Merritt
DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave., Suite 3300
Seattle, WA 98104
stuartdunwoody@dwt.com
laurenrainwater@dwt.com
ericfranz@dwt.com
maryannalmeida@dwt.com
rosemccarty@dwt.com
lisamerritt@dwt.com
Phone: (206) 622-3150

*Attorneys for Defendant/Counterclaim*
*Plaintiff Wizards of the Coast LLC*

Russell D. Nugent
THE HUMPHRIES LAW FIRM P.C.
1904 Eastwood Rd, Ste 310A
Wilmington, NC 28403
russell@kinglawonline.com
Phone: 910-899-0236

*Accepted Pro Hac Vice for Plaintiff TSR*
*LLC, and Counterclaim Defendants TSR*
*LLC, Justin LaNasa, and Dungeon Hobby*
*Shop Museum LLC*

Dayna J. Christian, WSB No. 32459
IMMIX LAW GROUP PC
400 Winslow Way E., Suite 210
Bainbridge Island, WA 98110
Dayna.Christian@immixlaw.com
Phone: (503) 802-5533

*Attorneys for Plaintiff and Counterclaim Defendant*
*TSR LLC and Counterclaim Defendants Justin*
*LaNasa and Dungeon Hobby Shop Museum LLC*

Immix Law Group PC
400 Winslow Way E. Suite 210
Bainbridge Island, WA 98110
Phone: (503) 802-5533
Facsimile: (503) 802-5351