The Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TSR LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>WIZARDS OF THE COAST LLC,<br><br>  Defendant. | No. 2:21-cv-01705-SKV<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| WIZARDS OF THE COAST LLC,<br><br>  Counterclaim Plaintiff,<br><br>  v.<br><br>TSR LLC; JUSTIN LANASA; and DUNGEON HOBBY SHOP MUSEUM LLC,<br><br>  Counterclaim Defendants. | **Noted for consideration:<br>October 28, 2022**<br><br>**ORAL ARGUMENT REQUESTED** |

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

A. Wizards Has Shown It Is Likely to Succeed on the Merits. ...................................................1

    1. Wizards Will Succeed on Its Claim for False Designation of Origin. ............................... 2

        a. Counterclaim Defendants Use Wizards' Marks in Commerce. ....................2

        b. Counterclaim Defendants' Use of the Marks Is Likely to Cause Confusion. ..............................................................................................................3

    2. Wizards Is Likely to Succeed on its Common Law Trademark Claim.............................. 5

        a. Wizards Has a Protectible Interest in the Marks.........................................5

        b. Wizards Has Shown Washington Use of the Marks. ..................................6

B. Regardless of Which Version of SFNG Is "Real," Counterclaim Defendants' Activity Irreparably Harms Wizards................................................................................7

C. Counterclaim Defendants Assert No Interest in Publishing SFNG; the Balance of Equities Tips in Wizards' Favor. ......................................................................................11

D. The Public Interest Supports a Preliminary Injunction.......................................................12

CONCLUSION................................................................................................................................12

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — i
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*,
   748 F. App'x 115 (9th Cir. 2018) ..................................................................................... 11

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ............................................................................................ 6

*Am. Rena Int'l Corp v. Sis-Joyce Int'l Co.*,
   2012 WL 12538385 (C.D. Cal. Oct. 15, 2012) ................................................................ 4

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ................................................................................ 3, 4, 5, 12

*Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*,
   2021 WL 4319448 (W.D. Wash. 2021) ............................................................................ 5

*BOKF, NA v. Estes*,
   923 F.3d 558 (9th Cir. 2019) ............................................................................................ 7

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) .......................................................................................... 5

*Canfield v. Health Commc'ns, Inc.*,
   2008 WL 961318 (C.D. Cal. Apr. 1, 2008) ...................................................................... 3

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009) ........................................................................... 12

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997) .......................................................................................... 3

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   924 F. Supp. 1559 (S.D. Cal. 1996) ................................................................................ 11

*Freecycle Network, Inc. v. Oey*,
   505 F.3d 898 (9th Cir. 2007) ............................................................................................ 2

*King Cnty. v. Viracon, Inc.*,
   2022 WL 838508 (W.D. Wash. Mar. 21, 2022) ............................................................... 7

*Kroeber v. GEICO Ins. Co.*,
   2015 WL 11669649 (W.D. Wash. Mar. 31, 2015) ........................................................... 7

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — ii
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Perfumebay.com Inc. v. eBay Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ....................................................................................... 3

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) .................................................................................... 4, 5

*Prissert v. EMCORE Corp.*,
    289 F.R.D. 342 (D.N.M. 2012) ...................................................................................... 9

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
    425 F.3d 708 (9th Cir. 2005) ....................................................................................... 12

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ....................................................................................... 3

**Federal Statutes**

15 U.S.C. § 1125(a)(1) ............................................................................................................. 3

**Other Authorities**

Dorothy Kim, *White Supremacists Have Weaponized an Imaginary Viking Past.
    It's Time to Reclaim the Real History*, Time (Apr. 15, 2019, 9:35 AM),
    https://time.com/5569399/viking-history-white-nationalists/ ................................... 10

Tom Birkett, *Why Far Right Groups Co-Opt Norse Symbols*, Fast Company (Jan.
    13, 2021), https://www.fastcompany.com/90593544/why-far-right-groups-co-
    opt-norse-symbols ....................................................................................................... 10

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — iii
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1       Counterclaim Defendants dispute few of the central points that support Wizards' Motion
2  for a preliminary injunction prohibiting Counterclaim Defendants from selling, promoting, or
3  distributing Star Frontiers New Genesis (SFNG).  They *admit* Wizards has used the Star Frontiers
4  and TSR Marks in commerce since before Counterclaim Defendants used the Marks or registered
5  them with the USPTO, which establishes that Wizards' rights in the Marks are superior, even
6  though its registrations lapsed.  They *admit* Wizards has evidence of consumer confusion, even
7  though they quibble with its significance—which shows a likelihood of confusion, even though
8  such a showing is not required for preliminary relief.  And they *concede* Counterclaim Defendants
9  have no equitable interest in publishing or distributing SFNG, a game they claim does not yet exist.

10      Counterclaim Defendants' main argument is that the version of SFNG upon which Wizards
11 relies—which this Reply calls the "Subpoenaed SFNG"—is not the real thing.  At most, this point
12 goes to whether Wizards is likely to be irreparably harmed by the activity it moves to enjoin.  But
13 Counterclaim Defendants' argument misses the mark.  Even if they are correct about the
14 provenance of the Subpoenaed SFNG—and that is doubtful, based on metadata associated with
15 the document—they do not and cannot dispute that the document was distributed publicly *only*
16 *because* Counterclaim Defendants were developing SFNG.  And, in any event, the document the
17 Counterclaim Defendants submit as the actual SFNG draft—the "LaNasa SFNG"—still contains
18 offensive content.  Publication or further distribution of any version of SFNG thus will irreparably
19 harm Wizards' reputation as a leading publisher of high-quality, inclusive RPGs.

20      The Court should grant Wizards' motion and enjoin Counterclaim Defendants'
21 infringement of Wizards' Star Frontiers and TSR Marks in the SFNG game.

22      **A.      Wizards Has Shown It Is Likely to Succeed on the Merits.**

23      All parties agree on the key facts regarding their respective uses of the Marks.  Wizards
24 acquired TSR, Inc. and its intellectual property, including the Star Frontiers and TSR Marks, in
25 1997.  *See* Wizards' Mot. Prelim. Inj. (corrected), Dkt. No. 35-2 (Mot.) 1; Dkt. No. 37 (Resp.) 1.
26 While Wizards did not maintain USPTO registrations, *see* Mot. 3; Resp. 2, it has continuously
27 used the Marks in commerce since January 2013 for the TSR Mark and November 2017 for the

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 1
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  Star Frontiers Mark. Mot. 2; Resp. 4. This use predates TSR LLC's USPTO registration of the
2  Marks, which began no earlier than 2020 and 2021. Mot. 2-3; Resp. 3.[1]

3  Counterclaim Defendants argue that Wizards has not shown a likelihood of success on the
4  merits, despite these undisputed facts, but each of their arguments fall short.

5          **1.**     **Wizards Will Succeed on Its Claim for False Designation of Origin.**

6  Wizards has established that it is likely to succeed on its claim that Counterclaim
7  Defendants "(1) use in commerce (2) any word, false designation of origin, false or misleading
8  description, or representation of fact,"—the Marks—"which (3) is likely to cause confusion or
9  misrepresents the characteristics of [their] goods or services." *Freecycle Network, Inc. v. Oey,* 505
10 F.3d 898, 902-04 (9th Cir. 2007) (citing 15 U.S.C. § 1125(a)). Counterclaim Defendants fail to
11 show otherwise.

12         **a.**     **Counterclaim Defendants Use Wizards' Marks in Commerce.**

13 Counterclaim Defendants argue that the SFNG listing on the Museum and TSR LLC
14 websites displayed "merely a digital mockup" and "not an actual product that could even
15 potentially be offered for sale at this point," Resp. 18, but they do not and cannot dispute that sales,
16 marketing, and distribution of SFNG—the activities Wizards asks this Court to enjoin—would
17 constitute use in commerce. Counterclaim Defendants have themselves represented that they
18 intend to use the Marks in commerce, averring in each of the applications filed with the USPTO
19 that "[t]he applicant has a bona fide intention… to use the mark in commerce on or in connection
20 with the identified goods/services." Decl. of Justin LaNasa, Dkt. No. 39 (LaNasa Decl.), Ex. A at
21 4, 8; Ex. B at 4, 8; Ex. C at 4, 7; Ex. F at 4, 8; Ex. G. at 4, 7-9. The LaNasa Declaration supporting
22 Counterclaim Defendants' Response to Wizards' Motion likewise states that TSR LLC "has been
23 using the TSR letters"—i.e., the TSR Mark—"in commerce since March and April 2021" and
24 "continues to do so through today." LaNasa Decl. ¶ 11.

25 Wizards need not wait until Counterclaim Defendants' infringing SFNG publication is

26 ---

27 [1] Counterclaim Defendants correct an error in the registration number for TSR Inc.'s 1992 application for the TSR Mark, *see* Resp. 1 n.3, which is 1681176.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 2
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  officially released before it can establish its likely success on the use-in-commerce element.  To
2  the contrary, courts regularly enjoin future trademark use, including via preliminary injunctions.
3  *See, e.g.*, *Canfield v. Health Commc'ns, Inc.*, 2008 WL 961318, at *3 (C.D. Cal. Apr. 1, 2008)
4  (preliminary injunction covering "use of the mark in relation to the mock-ups [for future
5  publications] that will be published in the coming year"); *Dr. Seuss Enters., L.P. v. Penguin Books
6  USA, Inc.*, 109 F.3d 1394, 1406 (9th Cir. 1997) (affirming "preliminary injunction prohibiting the
7  publication and distribution of the infringing work" that had been printed but not released for sale).
8  That Counterclaim Defendants have not yet "reaped any commercial benefit from… the SFNG
9  Game," Resp. 18, makes no difference where they plan to do just that.  Nor does that undermine
10  Counterclaim Defendants' own representations to the USPTO and this Court that they will use and
11  currently are using the Marks in commerce.

12              **b.      Counterclaim Defendants' Use of the Marks Is Likely to Cause
13                        Confusion.**

14  Wizards has established that Counterclaim Defendants' use of the Marks creates a
15  likelihood of confusion under the eight *Sleekcraft* factors, meeting this element of its
16  false-designation claim.  *See* 15 U.S.C. § 1125(a)(1).  Counterclaim Defendants say nothing about
17  Wizards' showing as to seven of those factors, which resoundingly demonstrate that Counterclaim
18  Defendants' use of the marks is likely to cause confusion.  *See* Mot. 8-12.
19  Actual confusion—the main issue on confusion that Counterclaim Defendants address, *see*
20  Resp. 20-22—is only one factor in this test, and it is not dispositive.  *AMF Inc. v. Sleekcraft Boats*,
21  599 F.2d 341, 353 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain
22  Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).  "[D]ifficulties in gathering evidence of actual
23  confusion make its absence generally unnoteworthy," *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d
24  1165, 1176 (9th Cir. 2007) (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d
25  1062, 1077 (9th Cir. 2006)), and it is "of diminished importance" at the preliminary injunction
26  stage because "a motion for preliminary injunction normally occurs early in litigation," before the
27  parties "have amassed significant evidence of actual confusion."  *Wells Fargo & Co. v. ABD Ins.*

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 3
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  *& Fin. Servs., Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014); *see also Pom Wonderful LLC v.*
2  *Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014).

3        Even so, Wizards' evidence of actual confusion is compelling. Counterclaim Defendants
4  argue that the "cbwjm" post in the thread called "Does TSR3 Have Nazi Connections?" shows
5  consumers are aware of the distinction between TSR LLC and TSR, Inc., but the post on its face
6  attributes that clarity to "the 3 on the end of TSR." Decl. of Lauren Rainwater, Dkt. 32 (Rainwater
7  Decl.), ¶ 13. This proves Wizards' point: without the "3"—which TSR LLC itself does not use
8  on the SFNG cover or elsewhere—nothing apparently would distinguish TSR LLC from the
9  original TSR, Inc. on whose reputation it trades. Wizards' second example shows gamers'
10 reasonable concern that people may "think that [the poster] buy[s] into" the offensive narrative.
11 *Id.* And while Wizards' third example shows commenters correcting an original poster with the
12 accurate information that TSR LLC is not affiliated with Wizards, Resp. 21, this again proves the
13 point: the original post shows confusion the other consumers must correct. *See* Rainwater Decl.
14 ¶ 13. Wizards "need not prove that *every* customer was confused, only that there is a likelihood
15 of confusion." *Am. Rena Int'l Corp v. Sis-Joyce Int'l Co.*, 2012 WL 12538385, at *6 n.3 (C.D.
16 Cal. Oct. 15, 2012) (granting preliminary injunction despite "several declarations of customers
17 who claim that they were not confused," which "do not disprove a 'likelihood of confusion' for
18 [others]"), *aff'd*, 534 F. App'x 633 (9th Cir. 2013).

19       Counterclaim Defendants also argue that the "new and modern" "look and feel" of the
20 SFNG mockup, as well as the passage of time "since the last edition [of Star Frontiers] was released
21 by TSR, Inc." somehow minimize the risk of confusion, Resp. 20, 22, but they offer no support in
22 the *Sleekcraft* factors (or any other precedent) for why that is so. The issue is not that the products
23 "look the same." *Cf.* Resp. 22. The issue is that Counterclaim Defendants have created and are
24 promoting an "all new" "return[]," *id.*, of Star Frontiers, using the Marks belonging to Wizards.
25 No amount of new "artwork and coloring" or changes in "the tag line," *id.*, can distinguish
26 Counterclaim Defendants' product from the original Star Frontiers brand, for which Wizards owns
27 the trademark—*especially* since SFNG explicitly links to the original. *See* LaNasa Decl. Ex. K at

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 4
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  18 ("How is this game different from the previous iterations?").

2  The remaining *Sleekcraft* factors—which Counterclaim Defendants do not address—
3  further show Counterclaim Defendants' use of the Marks is likely to confuse consumers:

4  **Strength of the Marks.**  The Marks are arbitrary or fanciful, the "most distinctive"
5  categories that "receive the most trademark protection." *Pom Wonderful*, 775 F.3d at 1126.

6  **Proximity and Relatedness of Goods.**  Counterclaim Defendants sell RPGs, exactly the
7  same kind of products as those on which Wizards licenses its Marks.

8  **Type of Goods and Customer Care.**  New players and other consumers encounter RPGs
9  in various settings, and the low price point means purchasers "are likely to exercise less care, thus
10 making confusion more likely." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036,
11 1060 (9th Cir. 1999).

12 **Similarity of the Marks.**  The Marks at issue are identical.

13 **Marketing Channel Convergence.**  Both Wizards and the Counterclaim Defendants
14 market and advertise the products in similar channels.  Counterclaim Defendants even advertised
15 SFNG as a "return" of the original.  *See* Resp. 22.

16 These factors all indicate the consumers are likely to be confused by Counterclaim
17 Defendants' use of the Marks—even without *any* showing of actual confusion.  That Wizards has
18 evidence that consumers actually were confused only further supports the conclusion that
19 consumers are *likely* to be confused.

20 **2.   Wizards Is Likely to Succeed on its Common Law Trademark Claim.**

21 Wizards will succeed on its claim for common law trademark infringement because it has
22 shown it has a protectible interest in the Marks and that Counterclaim Defendants' use is likely to
23 cause consumer confusion, as discussed above.  *See Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*, 2021
24 WL 4319448, at *2 (W.D. Wash. 2021) (state trademark claim elements).

25 **a.   Wizards Has a Protectible Interest in the Marks.**

26 Wizards' continuous use of the TSR Mark since January 2013 and the Star Frontiers Mark
27 since November 2017 establishes its superior rights in those Marks, compared to Counterclaim

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 5
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1 Defendants' 2020 and 2021 registrations. Counterclaim Defendants argue that Wizards' Motion
2 fails to establish its use of the Marks because it did not attach the licensing agreement with
3 OneBookShelf. Resp. 4. However, Counterclaim Defendants ignore Elizabeth Schuh's
4 uncontroverted declaration filed with Wizards' Motion, which states that Wizards has licensed the
5 Marks to OneBookShelf, and that OneBookShelf has sold thousands of products bearing the TSR
6 Mark for nine years and the Star Frontiers Mark for five. Dkt. No. 35-1, ¶¶ 6-8. Counterclaim
7 Defendants offer no evidence refuting this sworn testimony, and, indeed, they cannot do so, as
8 Wizards produced the licensing agreement to Counterclaim Defendants in discovery.[2]

9 This declaration establishes Wizards' licensing of the Marks, as well as its continuous use
10 in commerce since 2013 and 2017 through sales of products bearing the Marks. It makes no
11 difference that Wizards "does not account for any use of the Marks prior to those stated times,"
12 Resp. 4: what matters is that Wizards has continuously used the Marks in commerce since *before*
13 Counterclaim Defendants sought to use them. *See Airs Aromatics, LLC v. Victoria's Secret Stores*
14 *Brand Mgmt., Inc*., 744 F.3d 595, 599 (9th Cir. 2014) ("To establish a protectible ownership
15 interest in a common law trademark, the owner must establish not only that he or she used the
16 mark before the mark was registered, but also that such use has continued to the present." (Internal
17 quotation marks omitted)). Counterclaim Defendants do not dispute that prior continuous use.
18 And that is all that Wizards needs to establish its protectible ownership interest in the Marks.

19 **b.     Wizards Has Shown Washington Use of the Marks.**

20 Counterclaim Defendants argue only that Wizards has not established a claim under
21 Washington law because the statute deems a trademark "to be 'used' in this state when it is placed
22 in the ordinary course of trade" on goods "sold or otherwise distributed" in Washington. Resp. 23
23 (quoting RCW 19.77.010(11)). Wizards itself is located in Washington, and it licenses the Marks
24 from there. Suppl. Decl. of Elizabeth Schuh, ¶ 2. Wizards' licensee OneBookShelf operates an
25 online store with products bearing the Marks, making those products available for sale in

---

27 [2] Should the Court wish to see the licensing agreement, Wizards will supplement the record with the agreement upon request.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 6
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Washington. OneBookShelf's sales include actual sales in Washington. *See id.* ¶ 3.[3]

* * *

Wizards' strong showing on its likelihood of success on the merits supports a preliminary injunction, even without reference to the other *Winter* factors. *See BOKF, NA v. Estes*, 923 F.3d 558, 562 (9th Cir. 2019) ("sliding scale test"). But the remaining *Winter* factors, too, favor a preliminary injunction preventing Counterclaim Defendants from further activity with SFNG.

### B. Regardless of Which Version of SFNG Is "Real," Counterclaim Defendants' Activity Irreparably Harms Wizards.

Counterclaim Defendants spend the bulk of their brief on a sideshow: whether the version of SFNG on which Wizards' motion is based is authentic. Resp. 8-16.[4] Despite its prominence in the Response, this issue is of minimal significance to the question before the Court. At most, Counterclaim Defendants' points here are relevant to whether an injunction will remedy the irreparable harm on which Wizards' Motion is based—i.e., whether enjoining Counterclaim Defendants' activities with respect to SFNG will prevent the distribution of the offensive material that would injure Wizards' reputation if consumers (mistakenly) associate it with Wizards.

To begin with, Counterclaim Defendants do not dispute that there is a presumption of irreparable harm, and they fail to rebut it. Even if that were not so, Wizards will be irreparably harmed absent an injunction restricting Counterclaim Defendants' activities, for three reasons:

*First*, available metadata evidence indicates the Subpoenaed SFNG originated with the Counterclaim Defendants. Wizards received the Subpoenaed SFNG from Wizard Tower Games (WTG), a company owned by Don Semora. *See* Suppl. Decl. of L. Rainwater (Rainwater Suppl. Decl.) ¶ 2. WTG produced the Subpoenaed SFNG as a PDF with corresponding metadata. *Id.* &

---

[3] Wizards offers this additional evidence, as well as other evidence discussed in this Reply, to corroborate what it submitted in its Motion and "in response to issues raised by the [Counterclaim Defendants'] memoranda," an appropriate use of new evidence on reply. *Kroeber v. GEICO Ins. Co.*, 2015 WL 11669649, at *2 (W.D. Wash. Mar. 31, 2015); *see also, e.g.*, *King Cnty. v. Viracon, Inc.*, 2022 WL 838508, at *3 (W.D. Wash. Mar. 21, 2022). Counterclaim Defendants' preemptive request that the Court strike "any new material that Wizards may offer" or permit them an opportunity to respond, Resp. 8 n.8, has no basis where Wizards' reply evidence responds to issues they raised.

[4] Counterclaim Defendants also discuss a version of SFNG entitled "Star Frontiers Not Genuine." Resp. 6. Wizards has no knowledge of this document and does not rely upon it for its Motion.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 7
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Ex. A.  The metadata shows two things.  *First*, the author of the PDF is George Johnson—the admitted co-author of SFNG along with LaNasa.  *See id.*; *see also* Decl. of Dave Johnson (Johnson Decl.), Dkt. No. 40, ¶ 3; LaNasa Decl. ¶ 3.  *Second*, the PDF was created and last modified on February 12, 2022.  Rainwater Suppl. Decl. Ex. A.  This closely tracks the facts Counterclaim Defendants submit regarding sending SFNG to WTG for editing.  *See* LaNasa Decl. ¶ 23, ¶ 41 (attesting that "TSR provided Wizard Tower Games with the first draft of the SFNG Game in the form of an editable Google Doc document" "[o]n February 6, 2022" and that metadata on the version provided to WTG shows a February 6, 2022, date and "George Johnson" as the author). While the PDF metadata on the Subpoenaed SFNG is six days after the transmittal date to which LaNasa attests, other documents produced by WTG and Semora under subpoena show that Counterclaim Defendants continued working on the draft and sending updates to Semora around this time.  Rainwater Suppl. Decl. ¶ 4 & Ex. C (Feb. 23, 2022, email from D. Johnson to WTG sharing SFNG document).  This information, at the very least, undermines Counterclaim Defendants' declaration testimony denying a connection with the Subpoenaed SFNG.  And, while Johnson in particular attests that he "did not distribute the Google Doc document version of the SFNG Game to anyone except for Mr. LaNasa, at any time," Johnson Decl. ¶ 6, the Subpoenaed SFNG and the emails produced by Semora cast doubt on this story—if not undermine it entirely.[5]

Counterclaim Defendants misleadingly state that "neither Wizards nor its counsel had ever seen a copy of TSR's actual SFNG Game transcript before documents were produced by third parties in this case and shared with Counterclaim Defendants' counsel on September 27, 2022—after the Motion was filed."  Resp. 9-10.  Counterclaim Defendants appear to be distinguishing between the LaNasa SFNG, which they have filed as an exhibit, and the Subpoenaed SFNG.  For the avoidance of doubt, Wizards' counsel received and reviewed the Subpoenaed SFNG before

---

[5] Other aspects of Counterclaim Defendants' story likewise fail to line up.  LaNasa declares he received from WTG five copies of SFNG, each "in a color printed three-ring binder."  LaNasa Decl. ¶ 24.  He states he "made five exact photocopies of one of the binders" and "shared three of the three-ring binders… and copies thereof with three close personal friends."  *Id.* ¶¶ 24, 27.  But the version LaNasa attaches as Exhibit K to his declaration is not in color, and it is labeled "BETA COPY 8 OF 10."  *Id.* Ex. K at 2.  Neither the grayscale imaging nor the exhibit's notation as the eighth distributed copy is at all consistent with LaNasa's declared facts.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 8
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

filing the Motion—and indeed, filed excerpts of it with the Court. *See* Rainwater Decl. ¶ 12 & Ex. E. Wizards' counsel provided Counterclaim Defendants' counsel with copies of the third-party production containing the Subpoenaed SFNG on September 9, 2022, the day after filing the Motion and two days after receiving the production. *See* Rainwater Suppl. Decl. ¶ 3 and Ex. B. That Counterclaim Defendants dispute the authenticity of the Subpoenaed SFNG does not indicate a lack of reasonable inquiry by Wizards' counsel, as Counterclaim Defendants claim, *see* Resp. 9;[6] *see also Prissert v. EMCORE Corp.*, 289 F.R.D. 342, 346 (D.N.M. 2012) (counsel's use of documents "subject to reasonable dispute" about "authenticity" and "substantive validity" did not suggest failure to conduct a reasonable inquiry). In any event, as described above, the Subpoenaed SFNG's metadata links it to Counterclaim Defendants.

*Second*, even if Counterclaim Defendants' version of the events regarding the Subpoenaed SFNG were true, their activities caused its dissemination and infringement of Wizards' Marks. Counterclaim Defendants admit they have been working on SFNG—drafting SFNG, marketing it on the Museum and TSR LLC websites, distributing at least some number of copies of at least one version for playtesting, and promoting it to consumers. Even if Counterclaim Defendants are right that a third party changed their draft and leaked it to besmirch them—and that is doubtful, as discussed above—that would not have occurred if Counterclaim Defendants had not been making SFNG in the first place. Wizards' reputation also would not have been implicated if Counterclaim Defendants had opted against using Wizards' Marks. Wizards would not face reputational harm by mistaken association (or need the Court's assistance to avoid it) if, for example, a third party edited and leaked an RPG called "Galaxy Adventures" initially drafted by the "LaNasa Game Co." Wizards faces irreparable harm only because of Counterclaim Defendants' activities and their infringement of Wizards' Marks.

*Finally*, setting aside the Subpoenaed SFNG version, Wizards *also* would be harmed by

---

[6] Nor did counsel "inaccurately" attest to any personal knowledge with respect to the play test release, as Counterclaim Defendants insinuate, *see* Resp. 15-16. The Rainwater declaration submitted gaming media articles and stated that "the gaming press reported the Star Frontiers New Genesis product included racist and transphobic content," Rainwater Decl. ¶ 10—a wholly accurate description of the press coverage, as the exhibits attached showed.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 9
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the distribution of the version of SFNG to which LaNasa attested. Counterclaim Defendants argue that the LaNasa SFNG, which they say is a real draft, "does not contain the offensive content cited by Wizards," Resp. 14, but the exhibit contains multiple offensive elements of its own:

- Under "Star Law," "mutiny" includes "a rising of slaves on a planet where slavery is recognized by law or custom" and is punishable by death. LaNasa Decl. Ex. K at 27-28.
- The game plot history describes that one "race interbred with another compatible race" "[w]ith the rise of the eugenics movement." *Id.* at 30.
- Players "choose a race that [they'd] like to portray in the game world. Keep in mind all of the races have different abilities and weaknesses." *Id.* at 39.
- Among the "humanoid" races is the "Nordic" race, described as "Tall, blonde, blue-eyed race with exceptional attributes and powers ALL Attributes are in the 13+ range." *Id.* at 63. This race and description trades on white supremacist notions of superiority—i.e., "exceptional attributes and powers."[7]
- The explicit "GENDER[s]" for the "humanoid class" are "Male / Female." *Id.* at 66.
- The "Looks" characteristic states that "a gorgeous woman who is well endowed with a near-perfect figure, hair, eyes, etc., will tend to garner attention from most males when she walks into a room." *Id.* at 51. A female character "can increase their score artificially with the use of cosmetics. Put on some eyeliner! Some shadow will do the trick." *Id.*

These examples demonstrate that the LaNasa SFNG excludes and diminishes many people. As Wizards explained in its Motion, it is committed to a culture of gaming that embraces diversity and welcomes everyone. *See* Mot. 5-7. The LaNasa SFNG's racist and sexist content violates Wizards' philosophy. Publication thus risks Wizards' reputation, should consumers inaccurately attribute SFNG to it—as they are likely to do because of TSR LLC's use of Wizards' Marks.

---

[7] *See also* Tom Birkett, *Why Far Right Groups Co-Opt Norse Symbols*, Fast Company (Jan. 13, 2021), https://www.fastcompany.com/90593544/why-far-right-groups-co-opt-norse-symbols; Dorothy Kim, *White Supremacists Have Weaponized an Imaginary Viking Past. It's Time to Reclaim the Real History*, Time (Apr. 15, 2019, 9:35 AM), https://time.com/5569399/viking-history-white-nationalists/.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 10
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   Counterclaim Defendants do not directly contest the possibility of the reputational damage
2  to Wizards.  Indeed, they concede that the Subpoenaed SFNG contains offensive content (which
3  they disclaim).  *See* Johnson Decl. ¶ 8; LaNasa Decl. ¶¶ 25, 22.  But regardless of whether
4  Counterclaim Defendants created that content—and the currently available document metadata
5  indicates they did—or if it was added by someone else, that material only became public and posed
6  a risk to Wizards' reputation due to Counterclaim Defendants' use of Wizards' Marks.  And the
7  LaNasa SFNG—which Counterclaim Defendants authenticate—likewise contains offensive
8  content that would harm Wizards' reputation if consumers mistakenly attributed it to Wizards.
9  Both the Subpoenaed SFNG and the LaNasa SFNG thus show that Wizards will be irreparably
10 harmed absent an injunction preventing Counterclaim Defendants from infringing its Marks
11 through the publication and distribution of this product.  The disputed history of the Subpoenaed
12 SFNG document makes no difference in that conclusion.

**C.  Counterclaim Defendants Assert No Interest in Publishing SFNG; the Balance of Equities Tips in Wizards' Favor.**

15   Because Wizards has shown a likelihood of success on the merits on its trademark claims,
16  the balance of equities weighs in favor of an injunction as a matter of law.  *See AECOM Energy*
17  *& Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 120 (9th Cir. 2018); *Dr. Seuss*
18  *Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109
19  F.3d 1394 (9th Cir. 1997).  Counterclaim Defendants do not dispute this conclusion; they argue
20  only that Wizards has not met its burden on the likelihood-of-success prong.  Resp. 24.  But as
21  discussed above, Wizards established that it is likely to succeed on its claims.  Counterclaim
22  Defendants further concede that an infringing party has no equitable interest in continuing to
23  infringe another's marks.  They also do not argue that they have any other equitable interest in
24  continuing to use Wizards' Marks in connection with SFNG.  To the contrary, they argue that
25  SFNG "has never been available for sale to consumers in the marketplace, and the Counterclaim
26  Defendants have not sold (or attempted to sell) a single copy of the SFNG Game to anyone." Resp.
27  18. Enjoining Counterclaim Defendants to preserve this status quo will not harm them in any way.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 11
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The equities here are one-sided in favor of Wizards.

### D. The Public Interest Supports a Preliminary Injunction.

As to the public interest, Counterclaim Defendants again merely reiterate their assertion that Wizards has not met its burden. Resp. at 24. For all the reasons previously discussed, Counterclaim Defendants are wrong. An injunction here will serve the public interest by enforcing Wizards' trademark rights and protecting the public from confusion. *See State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005); *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd,* 348 F. App'x 288 (9th Cir. 2009). Counterclaim Defendants offer no argument otherwise as to this factor.

### CONCLUSION

Counterclaim Defendants' disputes about the authenticity and origin of the Subpoenaed SFNG game do not undermine Wizards' entitlement to an injunction preventing Counterclaim Defendants from publishing, distributing, or otherwise making available any iteration of SFNG. Wizards has shown that it is likely to succeed on the merits on its claims because it has superior rights to the Marks Counterclaim Defendants plan to or already use in commerce, and that use is likely to confuse consumers under the *Sleekcraft* test. Wizards is irreparably harmed by Counterclaim Defendants' activities around SFNG because (a) the Subpoenaed SFNG appears to have originated with LaNasa's co-author; (b) the Subpoenaed SFNG exists only because of Counterclaim Defendants, even if they did not create it; and (c) even the LaNasa SFNG, which Counterclaim Defendants authenticate, contains offensive material contrary to Wizards' commitment to inclusive gaming. Counterclaim Defendants do not raise any discrete arguments pertaining to the equitable and public interest factors, which also favor an injunction.

The Court should grant Wizards' Motion and enjoin Counterclaim Defendants from any further public activity with respect to any iteration of Star Frontiers New Genesis.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 12
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1      DATED this 28th day of October, 2022.

2                                            DAVIS WRIGHT TREMAINE LLP
                                             Attorneys for Defendant
3                                            Wizards of the Coast LLC

4
                                             By: *s/ Lauren Rainwater*
5                                                Stuart R. Dunwoody, WSBA #13948
                                                 Lauren Rainwater, WSBA #43625
6                                                MaryAnn T. Almeida, WSBA #49086
                                                 Eric A. Franz, WSBA #52755
7                                                Rose McCarty, WSBA #54282
                                                 920 Fifth Avenue, Suite 3300
8                                                Seattle, WA  98104-1610
                                                 Tel: 206-622-3150 / Fax: 206-757-7700
9                                                Email:  stuartdunwoody@dwt.com
                                                 Email:  laurenrainwater@dwt.com
10                                               Email:  maryannalmeida@dwt.com
                                                 Email:  ericfranz@dwt.com
11                                               Email:  rosemccarty@dwt.com

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 13
(2:21-cv-01705-SKV)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 3300
920 Fifth Avenue
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax