1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TSR LLC,

                            Plaintiff,

        v.

WIZARDS OF THE COAST LLC,

                            Defendant.

_____

WIZARDS OF THE COAST LLC,

                            Counterclaim Plaintiff,

        v.

TSR LLC; JUSTIN LANASA; and DUNGEON
HOBBY SHOP MUSEUM LLC,

                            Counterclaim Defendants.

_____

Case No. C21-1705-SKV

ORDER RE:  MOTION TO
ENFORCE THE PROTECTIVE
ORDER GOVERNING CONDUCT

## INTRODUCTION

This civil matter is subject to an automatic stay following Plaintiff/Counterclaim

Defendant TSR LLC's (TSR) bankruptcy filing in the United States Bankruptcy Court for the

Eastern District of North Carolina.  Dkt. 57.  After securing a Consent Order from the

Bankruptcy Court finding that the stay does not apply to Counterclaim Defendants Justin LaNasa

(LaNasa) and Dungeon Hobby Shop Museum LLC (the Museum), Dkt. 59, Ex. G, Defendant/

Counterclaim Plaintiff Wizards of the Coast LLC (Wizards) filed, in this Court, a Motion to Enforce the Protective Order Governing Conduct, Dkt. 58.

Wizards argues that LaNasa and the Museum violated the Stipulated Protective Order Governing Conduct entered by the Court in November 2022 (hereinafter "Protective Order"), Dkt. 47,[1] by posting disparaging remarks about third-party witness Don Semora.  Wizards requests that the Court impose a $10,000 monetary sanction on LaNasa and the Museum, and require them to pay attorney fees incurred by Wizards in bringing violations of the Protective Order to the Court's attention.  Dkt. 58.  LaNasa and the Museum oppose the motion and request oral argument.  Dkt. 60.

The Court finds it appropriate to consider Wizards' motion notwithstanding the stay. Having now considered the motion, all papers filed in support and opposition, and the remainder of the record, the Court finds oral argument unnecessary and concludes that LaNasa and the Museum violated the Protective Order, but declines to impose the requested sanctions.

## BACKGROUND

TSR filed this civil lawsuit seeking a declaratory judgment as to Wizards' lack of ownership over certain trademarks and copyrights.  Dkt. 1.  Wizards denies the alleged lack of ownership and filed counterclaims against TSR, the Museum, and LaNasa, the organizer of TSR and the Museum.  Dkt. 11.

Prior to entry of the automatic stay, the Court held a hearing on Wizards' request for an order requiring that Counterclaim Defendants refrain from harassing Semora and Michael Hovermale, two third-party subpoena recipients and witnesses.  *See* Dkt. 41.  Wizards argued

---

[1] Another Protective Order entered in this case addresses the treatment of confidential information, Dkt. 27, and is not relevant to the dispute before the Court.

that Counterclaim Defendants had harassed Semora and Hovermale through anonymous emails, disparaging posts and comments on social media, and a website, https://www.donosemora.com (hereinafter "donosemora.com"), containing personal information about Semora and believed by Wizards to be created by LaNasa. Counterclaim Defendants opposed the request, describing a longstanding dispute between LaNasa and Semora, arguing Semora and Hovermale had similarly harassed LaNasa, and suggesting that Semora or someone else bore responsibility for the website and anonymous emails.

Semora and Hovermale identified themselves as present for the hearing. The Court, while acknowledging that Semora and Hovermale were not parties to the case, cautioned them to be aware that commercial disputes are properly resolved in the courts and that they should be thoughtful about activities engaged in beyond their compliance with subpoenas. The Court also expressed its concern to counsel for Counterclaim Defendants about conduct linked to this case and its potential negative impact, but declined to order sanctions. The Court, instead, directed counsel for Wizards to draft a protective order relating to conduct.

The parties submitted and the Court entered the Protective Order now at issue in Wizards' motion. Dkt. 47. The Protective Order prohibits a party from engaging in direct or indirect conduct to improperly influence testimony or participation in this lawsuit, and provides for the imposition of sanctions for violations. *Id.*

On June 15, 2023, the Court entered a Bankruptcy Stay Order, staying this action until further application of the parties. Dkt. 57. In July 2023, Wizards requested that the Bankruptcy Court confirm the automatic stay did not preclude Wizards from filing a motion in this Court to enforce the Protective Order. *In re TSR, LLC*, No. 23-01577-5 (Bankr. E.D.N.C. July 23, 2023) (Dkt. 13). The Bankruptcy Trustee initially opposed and sought additional time to consider the

1    request.  *Id*. (Dkt. 19).  The Trustee later submitted a Consent Order finding that the automatic

2    stay did not apply to non-debtor third parties LaNasa and the Museum, and the Bankruptcy Court

3    entered that Order on November 13, 2023.  *Id.* (Dkt. 48); *see also* Dkt. 59, Ex. F.

4                                                    DISCUSSION

5           Wizards now moves to enforce the Protective Order in this Court.  Dkt. 58.  Wizards

6    argues that the automatic stay does not preclude the Court from enforcing the Protective Order,

7    and that LaNasa and the Museum violated the Protective Order and should be sanctioned.  Dkt.

8    58.  LaNasa and the Museum argue that the Court should refuse to hear Wizards' motion because

9    it was filed in violation of the stay.  Dkt. 60.  They further argue that, if considered, the motion

10   should be denied due to Wizards' failure to establish a violation of the Protective Order, and that

11   Wizards and Semora should be admonished for Semora's ongoing harassment of LaNasa.  *Id*.

12   A.     Consideration of Motion During Stay

13          Wizards asserts that the automatic stay applies only to claims against TSR, the debtor, or

14   against the property of the estate, *see* 11 U.S.C. § 362(a), and "does not apply to actions against

15   non-debtor third parties or codefendants of the debtor."  *Holland v. High Power Energy*, 248

16   B.R. 53, 57 (S.D. W. Va. 2000).  Wizards also asserts that, even during the stay, it remains

17   within this Court's "inherent power to take whatever steps necessary to ensure those persons

18   within its power comply with its orders."  *In re Rook*, 102 B.R. 490, 493-95 (Bankr. E.D. Va.

19   1989) (adopting reasoning finding that a non-bankruptcy court "'must retain the ability to

20   compel compliance with its orders; a party seeking relief from his creditors is not free to run

21   rampant in flagrant disregard of the powers of the court.'") (quoted case omitted).  *See also In re*

22   *Dingley*, 852 F.3d 1143, 1146 (9th Cir. 2017) (observing that the reach of a bankruptcy

23   automatic stay "is not unlimited," and finding civil contempt proceedings exempted under 11

ORDER RE: MOTION TO
ENFORCE PROTECTIVE ORDER
- 4

U.S.C. § 362(b)(4), the "government regulatory exemption", when "proceedings are intended to effectuate the court's public policy interest in deterring litigation misconduct.")

LaNasa and the Museum do not dispute any of the legal authority cited by Wizards. They also concede this Court's authority to allow a filing in this stayed case, and argue only that the Bankruptcy Court lacked authority to address the status of the stay. *See Holland*, 248 B.R. at 56-57 ("[W]hile it is correct that the bankruptcy court is the exclusive forum to consider a motion for relief from the automatic stay, the district court retains jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to the automatic stay.")

The Court is not persuaded that it should decline to consider Wizards' motion based on the procedural objection raised by LaNasa and the Museum. The Court also finds it appropriate to exercise the Court's undisputed authority to allow Wizards' filing in this stayed case and to enforce the Protective Order, as may be found warranted.

B.    Alleged Violations of Protective Order

The Protective Order addresses conduct regarding witnesses in this case, including third-party subpoena recipients, witnesses subject to deposition or examination at trial, or any other person who may have or be perceived to have pertinent information. Dkt. 47. Its protections extend to witnesses, parties, and any party's employees, agents, representatives, family members or other persons acting under a party's direction and control. The Protective Order explains:

> The full litigation of disputes on the merits requires truthful and open testimony by those individuals with knowledge of facts relevant to a case. It also requires cooperation of both Parties and non-party Witnesses who have information, documents, or other materials subject to discovery. While parties in litigation retain their First Amendment rights, their rights regarding the issues before the Court are constrained by the Court's pursuit of truth and the just resolution of disputes. Speech that interferes with this pursuit by harassing, intimidating, pressuring, or otherwise improperly attempting to influence Witnesses or a Party is not permitted. . . .

ORDER RE: MOTION TO
ENFORCE PROTECTIVE ORDER
- 5

1    *Id*. at 2.  The Protective Order provides that no party may engage in any direct or indirect

2    conduct to improperly influence testimony or participation in this lawsuit.  Prohibited conduct

3    includes, but is not limited to, "any public, limited, or private statements intended to or likely to

4    have the effect of harassing, intimidating, threatening, or otherwise improperly influencing" a

5    witness or party, "the actual or threatened dissemination of any personal information" about a

6    witness or party, use of the name or likeness of a witness or party in a derogatory or harassing

7    manner, "solicitation, encouragement, or suggestion for others to perform any conduct barred"

8    by the Protective Order, or "any other behavior intended to or likely to have the effect of

9    improperly influencing" a witness or party.  *Id*. at 2-3.  A party found to have directly or

10    indirectly violated the Protective Order "may be subject to sanctions," including attorney fees for

11    the party bringing the violation to the Court's attention and any damages or expenses incurred by

12    a witness or party as a result of barred conduct.  *Id*. at 3-4.

13        Wizards here asserts that, while ceasing for some time following entry of the Protective

14    Order, the harassment of Semora resumed almost immediately after TSR's bankruptcy filing.

15    *See* Dkts. 58 & 59.  Wizards points to, *inter alia*, the reappearance of donosemora.com in June

16    2023, anonymous social media posts and emails with derogatory and threatening content, and

17    posts and comments made by LaNasa and the Museum.  *See* Dkt. 59, ¶¶2-4, 6-7 & Exs. A-C, E.[2]

18

19           [2] Wizards provides screenshots of the donosemora.com website, Dkt. 59-1 at 3-63, and

20    anonymous posts, comments, and other communications, *id*. at 65-68 ("Anonymous member" Facebook post providing link to donosemora.com and warning others to "stay away" from "this grifter" who "got me for a few dollars" and "scammed [others] for much more."; communications alerting Semora that

21    "Vance K. Yarg" accused Semora of a "scam"), and at 90 (email from "Anonymousemail" stating:  "This is not Justin or anyone else who knows him.  Your day is coming prison is where you are going.  No convention will happen your LIES Don will be exposed.  We are emailing everyone the nice pics of your

22    wife.  AI is a wonderful thing.  You can't do anything about it.")  *See also* Dkt. 59, ¶7 (counsel for Wizards attests that Semora told her he had been contacted by a state employee in Michigan regarding a

23    tip that Semora falsely claimed veteran status).  Wizards also provides an email chain appearing to show LaNasa, using his own name, made an inquiry to a third party before the third party received a series of

ORDER RE: MOTION TO
ENFORCE PROTECTIVE ORDER
- 6

LaNasa and the Museum deny responsibility for and assert an absence of proof in relation to the bulk of the alleged harassment. *See* Dkt. 60 & Dkt. 61, ¶¶2, 4-5 (LaNasa attests that donosemora.com is not registered to him or within his control and denies responsibility for the anonymous posts and communications). LaNasa and the Museum maintain their compliance with the Protective Order, asserting their posts and comments, *see* Dkt. 59-1 at 69, 70 & 73, reflect their personal or professional frustration, not an intent to improperly influence witness testimony or participation in this lawsuit. Dkt. 60 & Dkt. 61, ¶¶3, 6-8. LaNasa and the Museum also argue that Semora should be admonished for violating the Protective Order through his continued harassment of LaNasa, providing examples of lewd and offensive social media posts and comments, as well as Semora's public commentary on the proceedings in both this Court and the Bankruptcy Court. Dkt. 61, ¶¶9-12.[3] They assert that Semora has worked closely with Wizards and its counsel, and that he falls within the Protective Order as a person acting under Wizards' direction or control.

The Court declines to reach a conclusion regarding donosemora.com, anonymous posts, comments, and other communications, or other alleged harassment not directly attributable to LaNasa or the Museum. While the Court is concerned by the timing and other connections drawn by Wizards and construed as suggesting LaNasa's involvement, the evidence does not clearly establish that LaNasa bears responsibility for this activity.

---

anonymous emails alleging fraud by Semora. Dkt. 59-1 at 85-88. However, because the personal contact information is redacted, it is not clear whether LaNasa made the initial inquiry. *Id.*

[3] In addition to lewd and offensive comments, Semora posted a link to a "pot" business owned by LaNasa and notes his "plan to ensure proper people know[,]" and commented as follows on a post mocking LaNasa's bankruptcy filing: "[LaNasa] is a two legged lying, crawling piece of shit. I cannot wait for my day in court against him." Dkt. 61, ¶¶9-11.

ORDER RE: MOTION TO
ENFORCE PROTECTIVE ORDER
- 7

1        The Court, on the other hand, find it necessary to reach a conclusion in relation to activity

2   directly attributable to and not disputed by LaNasa and the Museum.  First, on a Facebook post

3   made by "Anonymous Member" and providing a link to donosemora.com, LaNasa commented:

4   "Donald got me for 23k plus damages.  He has caused a lot of others in the publishing/game

5   industry a lot of strife, confusion, and injury.  Don't worry; my case on Semora is still pending,

6   and he will see the scales of justice very soon."  Dkt. 59-1 at 69.  Second, in a Facebook post

7   responding to a post mocking TSR's bankruptcy filing ("NuTSR bankrupt?  Oh my, what is the

8   world coming to? Ah, it's senses.  Big surprise when you are headed by a slimeball."), the

9   Museum provided a link to donosemora.com, and stated:  "These are the people that huddle

10  together as a team.  I thought that as you get older, you get wiser.  This is not the case for some."

11  *Id*. at 73-74.  Third, in response to a YouTube comment made by Wizard Tower Games, a

12  company owned by Semora, that "Games are being played, and they are games one does not

13  want to play with the Bankruptcy Court," the Museum replies:  "Lol, as you would know, I think

14  bankruptcy is the only thing you're a pro at!  Is that 3 or 5 you have filed[,] hard to track

15  Semora[.]"  *Id*. at 70.

16       The Facebook comment and post necessitate consideration of the content of donosemora.

17  com.  Screenshots provided by Wizards show that donosemora.com contained numerous

18  disparaging comments about Semora and companies he owns, accusing Semora of scamming,

19  grifting, threatening, and doxing his customers, forging documents, and attacking games created

20  by LaNasa, advising that Semora and his companies should be avoided, and inviting reports from

21  anyone harmed by his actions.  *Id*. at 3-63.[4]  The screenshots also show numerous personal items

22

23       [4] Counsel for Wizards explains that the website was back online as of June 14, 2023, that the
screenshots were captured on the following day, and that, as of the November 6, 2023 filing of Wizards'

associated with Semora and available for download, including, *inter alia*, "Bank" documents and documents associated with civil, criminal, and bankruptcy court matters. *Id*. at 13-14, 22-23.

In posting a link to donosemora.com, the Museum violated the Protective Order through dissemination of personal information about a witness. By commenting on a post containing a link to donosemora.com that Semora would soon "see the scales of justice", LaNasa stepped over the line set by the Protective Order with statements intended to or likely to have the effect of harassing, intimidating, threatening, or otherwise improperly influencing a witness. In addition, all three of the statements at issue entail indirect or direct use of a witness's name in a derogatory or harassing manner.

The Court, on the other hand, disagrees with the contention that Semora may be found to have violated the Protective Order. The Protective Order provides that no "Party" may engage in any direct or indirect conduct to improperly influence testimony or participation in this lawsuit, and provides for sanctions against a "Party" found to have violated its terms. Dkt. 47 at 2-3. Semora is not a party to this action. Nor is he represented by counsel for Wizards.

The Court, at the same time, disagrees with Wizards' contention that Semora's actions are "irrelevant." Dkt. 63 at 7. LaNasa and the Museum show that Semora has on multiple occasions made derogatory and offensive comments about LaNasa, comments that, if made by a party, would be sanctionable under the Protective Order. *See* Dkt. 61, ¶¶9-12. It is hard to reconcile these comments with Wizards' contention that the conduct found to have violated the Protective Order had or could have had the effect of intimidating, pressuring, or otherwise improperly attempting to influence Semora's testimony or other participation in this lawsuit. If

---

motion, donosemora.com redirects to a GoDaddy.com notice stating: "'The domain donosemora.com is registered, but may still be available. It's parked free, courtesy of GoDaddy.com.'" Dkt. 59, ¶2.

anything, Semora appears eager to continue his participation in these proceedings. *See, e.g.,* Dkt. 61. The Court, for these reasons, declines to exercise its discretion to impose sanctions against LaNasa or the Museum for violations of the Protective Order at this time.

The Court nonetheless remains concerned by all of the conduct addressed in this Order. LaNasa and the Museum knowingly entered into the Protective Order and are advised that further violations of the Order will result in sanctions. They should also note that any association with donosemora.com or "anonymous" communications such as those discussed herein is a topic likely to be further explored. The Court advises Semora that it will reflect upon his conduct in entertaining any future motion seeking enforcement of the Protective Order, and, as necessary, in considering the admissibility of evidence relevant to his credibility as a witness at trial. The Court, finally and once again, cautions that all parties and witnesses to this matter should refrain from behavior that negatively impacts the litigation process.

<u>CONCLUSION</u>

The Court, in sum and for the reasons discussed above, GRANTS Wizards' Motion to Enforce the Protective Order Governing Conduct, Dkt. 58, but declines to impose the requested sanctions. The Clerk is directed to send a copy of this Order to the parties.

Dated this 18th day of December, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER RE: MOTION TO
ENFORCE PROTECTIVE ORDER
- 10